Eric J. Benink, Esq., SBN 187434
Mary K. Wyman, Esq., SBN 260104
KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP
625 Broadway, Suite 635
San Diego, CA 92101
Tel: (619) 232-0331
Fax: (619) 232-4019

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON EVANS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BBG COMMUNICATIONS, INC., a Delaware corporation, and DOES 1 - 10,<br><br>Defendants. | Case No.: 10-CV-0542 H (NLS)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Brandon Evans ("Plaintiff" or "Evans") on behalf of himself and all others similarly situated, alleges, upon personal knowledge as to himself and his acts, and as to all other matters upon information and belief based upon, inter alia, the investigations made by his attorneys, as follows:

## I.
## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of a class of BBG Communications, Inc. ("BBG") customers who made long-distance calls on payphones serviced by BBG.

2. BBG offers long-distance payphone services. Payphones serviced by BBG state a misleading "beginning" rate on the payphone in order to entice customers to use the payphone for long distance calls. But BBG fails to disclose ancillary charges such as connection fees and

the minimum number of minutes per call to be charged. These unfair business practices result in consumers incurring outrageously high and undisclosed charges for BBG payphone services.

3. Plaintiff seeks damages and injunctive relief from BBG on behalf of consumers who have suffered from this illegal and unfair business practice.

## II.
## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. §1132(d) as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the plaintiff class is a citizen of a different state than at least one defendant. The state law claim raised herein is subject to this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5. Venue in this district is proper under 28 U.S.C. § 1391 as the BBG transactions at issue emanated from San Diego County, California and BBG is subject to personal jurisdiction in this district.

## III.
## PARTIES

6. Plaintiff Brandon Evans is and was at all relevant times, a citizen of Shallotte, North Carolina.

7. Defendant BBG Communications, Inc. is and was at all relevant times, a Delaware corporation operating and conducting business throughout California. BBG's principal place of business is at 1658 Gailes Blvd. Suite C, San Diego, CA 92154.

8. Plaintiff is not aware of the true names and capacities of defendants sued herein as DOES 1 through 10 inclusive and, therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of said fictitiously-named defendants is in some manner responsible for the acts, omissions, injuries and/or damages alleged herein.

/ / /

/ / /

## IV.
## SUBSTANTIVE ALLEGATIONS

9. BBG offers payphone services typically found in airports, cruise terminals, and hotels and provides operator-assisted calls service. BBG contracts with airports, hotels, and other payphone service providers to provide long distance collect and credit card calls to customers using payphones that do not otherwise provide long-distance service. It maintains a website at bbgusa.com. According to its website's Privacy Policy, "BBG provides international telecommunications services, including public telephony, calling card, long distance operator assistance, credit card processing, billing, collection and wireless telecommunication services." The website also states that it adheres to data protection principles developed by the European Union with respect to its operations in the E.U.

10. BBG contracts and forms joint ventures with payphone owners in which the contracting parties share revenues from the long-distance calls. BBG's website states, for example, that "hotels entering into an agreement with BBG Communications, Inc. will allow it to handle every Operated Assisted Call and provide the hotel with a significant share of the revenue generated from these calls." Likewise, BBG "forms partnerships with airports…in an attempt to enhance the available options offered to its customers, while providing a reliable monthly revenue stream." The contracts are drafted and executed in California by BBG.

11. When a caller uses a payphone to make a long distance call serviced by BBG, the caller is connected with BBG's operator who assists the customer in making the connection. The BBG operator asks for the customer's credit or debit card information. BBG operates its services, including but not limited to the operator, billing, and telecommunication services, from its business offices in San Diego, California. The policies regarding how rates and fees are disclosed to customers are determined by BBG's officers in San Diego, California.

12. On or about November 25, 2009, Plaintiff was vacationing on a cruise in the Bahamas. Plaintiff wished to call home, but did not have cell-phone service. After exiting the cruise ship in Nassau, Plaintiff proceeded to a bank of payphones located at the cruise ship terminal. Plaintiff observed a yellow and black sticker on each of the payphones stating

1  US/International Calls from $.69 per minute. The payphones did not display any other
2  disclosures regarding rates, fees, or charges.

3        13. BBG is aware that payphone owners provide partial and inaccurate rate and fee
4  information to entice consumers to use the service and knows that this information is incomplete
5  and/or inaccurate.

6        14. Plaintiff relied on this per-minute rate and the fact that no other fees were
7  disclosed on the sticker when deciding to use the payphone's service. He attempted to place a
8  phone call to his family in the United States. He swiped his debit card at the payphone and was
9  connected to a BBG operator. Despite the fact that BBG knows that when the customer connects
10 to the operator, the consumer is relying on partial information and is unaware of numerous
11 ancillary charges and the exact rate-per-minute that they will be charged, BBG does not disclose
12 this information to the customer at any point during the transaction.

13       15. Plaintiff received the voicemail of the person he was calling and the call lasted for
14 approximately one minute. Plaintiff then repeated these steps and placed a second call to another
15 number. Again, Plaintiff received the person's voicemail and the call lasted for approximately
16 one minute. Later the same day, Plaintiff made a third call using the same payphone. This call
17 was successful and lasted for approximately two minutes.

18       16. BBG charged his debit card the following: $1.95 for each of the three calls,
19 $41.89 for the first call, $41.91 for the second call, and $41.94 for the third call. Through the
20 parties' conduct, an implied contract existed.

21       17. Plaintiff was shocked by these excessive charges. At no time was Plaintiff
22 informed of the actual per-minute rates of the phone call he was attempting to make. Further,
23 Plaintiff was never informed that he would be charged additional fees in connection with the call.
24 Plaintiff could not have known of these excessive charges because, unbeknownst to consumers,
25 BBG has had, and continues to have, a business practice of imposing undisclosed ancillary
26 charges on consumers on top of the per-minute rate. These charges are in the form of connection
27 fees or a minimum number of minutes that will be charged for each call. Because the consumer
28 is unaware of both the actual per-minute rate and the fact that they will be subject to other

undisclosed ancillary charges, BBG's business practice results in exorbitant and unexpected charges on the consumers' credit or debit cards.

18. These abuses are echoed by consumers throughout the United States. Consumer web sites are brimming with customer complaints alleging similar gouging. One consumer using a BBG serviced payphone to make a phone call from Cozumel, Mexico to the United States complains: "I made the two phone calls each lasting 3 minutes each. I was contacted by credit [c]ard company to verify usage and was told each call was $36.00 each. I had no idea what the charges would have been if so I would not have made those calls." Another BBG customer who placed a call from Iraq to the United States claims she has "been charged over $150 (4 different charges for the same phone call!) in the past 5 days." Yet another consumer complains that he "[m]ade a quick 4 minute call from Liepzig to Copperas Cove, TX and received a bill from BBG for $38 instantly…[f]our days later, that bill turned into another $80 from straight out of the blue."

19. Indeed, in the past three years, 611 consumer complaints have been filed with the San Diego office of the Better Business Bureau ("BBB"). The BBB issued BBG an F rating and has withheld BBB accreditation. BBG is aware of these abuses. Indeed, BBG has formed a department specifically to deal with customer complaints.

20. As a result of these unfair and illegal practices, Plaintiff was charged stunning fees of $131.59 for less than four minutes of telephone service. Had Plaintiff been aware of the actual charges, he would not have used BBG's services.

## V.
## CLASS ALLEGATIONS

21. Plaintiff seeks to certify a Plaintiff Class pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (b)(3).

22. The Plaintiff Class is defined as follows:

> For the period of March 12, 2006 through the date of the trial, all United States citizens who placed a phone call from a BBG serviced payphone from any destination to a destination inside the United States.

23. The members of the Plaintiff Class are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of members in the proposed Class.

24. Questions of law and fact common to the members of the Plaintiff Class predominate over questions that may affect individual class members. Among the questions of law and fact common to the Plaintiff Class are:

    (a) Whether BBG engages in unfair business practices by imposing undisclosed fees and charges on its customers in connection with their payphone services.

25. Plaintiff's claims are typical of the claims of the members of the Plaintiff Class as all members of the Plaintiff Class are similarly affected by Defendant's wrongful conduct.

26. Plaintiff will fairly and adequately protect the interests of the members of the Plaintiff Class and has retained counsel competent and experienced in consumer class action litigation.

27. The Defendant has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

28. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the injuries suffered by individual Plaintiff Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

///

///

///

///

///

///

///

# VI.
# CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of Cal. Bus. & Prof. Code §17200
### (Against BBG and DOES 1-10)

29. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

30. The California Unfair Competition Law ("UCL") (Bus. & Prof. Code §§ 17200, *et seq.*) prohibits acts of unfair competition, which include any "unlawful, unfair, or fraudulent business act or practice."

31. By its actions described above, Defendant violated and continues to violate the UCL in that it has engaged and continues to engage in unfair business practices within the meaning of the UCL.

32. Defendant has engaged in an "unfair" business practice by charging excessive, undisclosed, and unfair fees in connection with long-distance phone calls made through payphones serviced by Defendant. Defendant fails to inform potential customers of both the actual per-minute rate of the call they are attempting to place, and any ancillary fees, such as a connection fee or a minimum number of minutes, they will be charged in connection with the call.

33. As a direct and proximate result of these acts, Plaintiff and the Plaintiff Class have suffered injury in fact and have lost money and property through exorbitant and unexpected charges to their credit and debit cards.

34. Defendant received and continues to hold monies belonging to Plaintiff and members of the Class. Plaintiff and the Class, pursuant to Bus. & Prof. Code § 17203, seek an order and/or judgment from the Court to enjoin defendant from engaging in practices which constitute unfair competition and which may be necessary to restore to the Class, all monies wrongfully acquired by defendant by means of such practices, plus interest and attorneys' fees.

/ / /

/ / /

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(Against BBG and DOES 1-10)**

35. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

36. Through the parties' conduct, an implied contract existed.

37. Defendant charged and unjustifiably retained excessive sums of money from Plaintiff through charging Plaintiff undisclosed fees and charges in connection with their payphone services.

38. Defendant was unjustly enriched at Plaintiff's and the Class' expense.

**THIRD CLAIM FOR RELIEF**
**Conversion**
**(Against BBG and DOES 1-10)**

39. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

40. Plaintiff owned and/or possessed property in the form of specific and identifiable sums of money in the amount of $128.83

41. Defendants converted the monies from Plaintiff's accounts by imposing undisclosed fees and charges, as set forth above.

42. As a result of the conversion, Plaintiff and the Plaintiff Class suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of himself and all others similarly situated:

A. A determination that this action is a proper class action maintainable pursuant to Federal Rule of Civil Procedure 23 and an order appointing Plaintiff as representative of the Class and Krause Kalfayan Benink & Slavens, LLP as Plaintiff Class counsel;

B. Damages, restitution, and disgorgement in an amount to be determined at trial, but not less than $5,000,000.

C.  Equitable and injunctive relief enjoining defendants from engaging in practices which constitute unfair competition;

D.  Pre-judgment interest at the maximum rate allowable at law;

E.  Reasonable attorney's fees as permitted by law;

F.  Court costs; and

G.  Such other and further relief as the Court deems just and proper.

Dated: July 16, 2010                                      KRAUSE KALFAYAN BENINK & SLAVENS, LLP

/s/ Mary K. Wyman
_____
Mary K. Wyman, Esq.
*Attorneys for Plaintiff*
mwyman@kkbs-law.com

## DEMAND FOR JURY TRIAL

Plaintiff Brandon Evans hereby demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: July 16, 2010                                      KRAUSE KALFAYAN BENINK & SLAVENS, LLP

/s/ Mary K. Wyman
_____
Mary K. Wyman, Esq.
*Attorneys for Plaintiff*
mwyman@kkbs-law.com