FRED R. PUGLISI, Cal. Bar No. 121822
VALERIE E. ALTER, Cal. Bar No. 239905
ELIZABETH S. BERMAN, Cal. Bar No. 252377
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: 310-228-3700
Facsimile: 310-228-3701
fpuglisi@sheppardmullin.com
valter@sheppardmullin.com
eberman@sheppardmullin.com

Attorneys for Defendant,
BBG Communications, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON EVANS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BBG COMMUNICATIONS, INC., a Delaware CORPORATION, and DOES 1 - 10,<br><br>Defendant. | Case No. 10-CV-0542-H-NLS<br><br>**DEFENDANT BBG COMMUNICATIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: August 30, 2010<br>Time: 10:30 a.m.<br>Courtroom: 13 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. FACTS ........ 4

A. BBG Communications. ........ 4

B. Plaintiff's Phone Calls From The Bahamas. ........ 4

C. Plaintiff's Original Complaint Against BBG Communications. ........ 5

D. Plaintiff's Amended Complaint Against BBG Communications. ........ 6

III. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ........ 6

A. Standard For A Rule 12(b)(6) Motion To Dismiss. ........ 6

B. Each Of Plaintiff's Claims Fails Because Applying California Law To A Phone Call Made From The Bahamas To North Carolina Would Violate The Due Process Clause Of The United States Constitution. ........ 7

C. Plaintiff's Claim For Violation Of Section 17200 Fails ........ 9

1. Plaintiff May Not Use the UCL to Circumvent the Effect of § 201(b) of the FCA. ........ 10

2. BBG Communications Has No Duty To Disclose The Exact Amount Of Its Fees ........ 13

3. BBG Communications' Business Practices Are Not Unfair ........ 17

4. Plaintiff Does Not Sufficiently Allege Justifiable Reliance ........ 19

D. Plaintiff's Claim For Breach Of Implied Contract Fails. ........ 20

1. Plaintiff's Claim For Breach Of An Implied-In-Fact Contract Fails. ........ 20

2. Plaintiff's Claim For Breach Of An Implied-In-Law Contract Fails. ........ 21

E. Plaintiff's Conversion Claim Fails. .......................................................22

IV. CONCLUSION ...........................................................................................24

# Table of Authorities

Page(s)

Federal Cases

*Allstate Ins. Co. v. Hague*
449 U.S. 302, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981) .......... 7

*Ashcroft v. Iqbal*
___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 7

*Balistreri v. Pacifica Police Dep't*
901 F.2d 969 (9th Cir. 1988) .......... 7

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 7

*Doe v. Wal-Mart Stores, Inc.*
2007 U.S. Dist. LEXIS 98102 (March 30, 2007) .......... 8

*DSU Aviation, LLC v. PCMT Aviation, LLC*
2007 U.S. Dist. LEXIS 86835 (N.D. Cal. Nov. 14, 2007) .......... 23

*Gutierrez v. Wells Fargo & Co.*
622 F. Supp. 2d 946 (N.D. Cal. 2009) .......... 23

*Int'l Paper Co. v. Ouellette*
479 U.S. 481, 107 S. Ct. 805; 93 L. Ed. 2d 883 (1987) .......... 11

*Janda v. T-Mobile*
2009 WL 667206 (N.D. Cal. Mar. 13, 2009) .......... 15, 19

*Lozano v. AT&T Wireless Services, Inc.*
504 F.3d 718 (9th Cir. 2007) .......... 17, 18

*North County Communications Corp. v. California Catalog & Technology*
594 F.3d 1149 (9th Cir. 2010) .......... 10

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) .......... 7, 8

*Priyanto v. MS/Amsterdam*
2009 U.S. Dist. LEXIS 7849 (C.D. Cal. Jan. 23, 2009) .......... 8

*Qwest Corp. v. Arizona Corp.*
567 F.3d 1109 (9th Cir. 2009) .......... 12

*Riensche v. Cingular Wireless LLC d.b.a. AT&T Wireless*
2009 U.S. Dist. LEXIS 95802 (W.D. Wash. Oct. 2, 2009) .......... 15, 16

*Smale v. Cellco Partnership d.b.a. Verizon Wireless*
547 F. Supp. 2d 1181 (W.D. Wash. 2008) .......... 15, 16

*Spiegler v. Home Depot U.S.A., Inc.*
552 F. Supp. 2d 1036 (2008) .......... 17

*Tidenberg v. Bidz.com, Inc.*
2009 U.S. Dist. LEXIS 21916 (C.D. Cal. March 4, 2009) .......... 8

*Ting v. AT&T*
319 F.3d 1126 (9th Cir. 2003) .......... 11

State Cases

*Berryman v. Marit Prop. Mgmt., Inc.*
152 Cal. App. 4th 1544 (2007) .......... 13

*Blanks v. Shaw*
171 Cal. App. 4th 336 (2009) .......... 10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
20 Cal.4th 163 (1999) .......... 17, 18, 19

*Gomez v. Lincare*
173 Cal.App.4th 508 (2009) .......... 20

*Heliotis v. Schuman*
181 Cal. App. 3d 646 (1986) .......... 14, 17

*Kahn v. Lischner*
128 Cal. App. 2d 480 (1954) .......... 19, 20

*Lazar v. Hertz Corp.*
69 Cal. App. 4th 1494 (1999) .......... 12

*McBride v. Boughton*
123 Cal.App.4th 379 (2004) .......... 21

*McKell v. Washington Mutual, Inc.*
142 Cal. App. 4th 1457 (2006) .......... 22, 23

*Motors, Inc. v. Times Mirror Co.*
102 Cal. App. 3d 735 (1980) .......... 17, 18

*Otworth v. Southern Pac. Transp. Co.*
166 Cal.App.3d 452 (1985) .......... 21

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*
150 Cal. App. 4th 384 (2007) .......... 22

*Persson v. Smart Inventions, Inc.*
125 Cal. App. 4th 1141 (2005)........................................................................... 17

*Schnall v. Hertz Corp.*
78 Cal. App. 4th 1144 (2000)............................................................................. 12

*In Re Tobacco II Cases*
46 Cal.4th 298 (2009)...................................................................................... 19

*Vu v. Cal. Commerce Club*
58 Cal. App. 4th 229 (1997)............................................................................... 22

*Warner Const. Corp. v. City of Los Angeles*
2 Cal.3d 285 (1970)......................................................................................... 15

*Weitzenkorn v. Lesser*
40 Cal.2d 778 (1953)........................................................................................ 21

*Wilhelm v. Pray, Price, Williams & Russell*
186 Cal.App.3d 1324 (1986)............................................................................. 19

# MEMORANDUM OF POINTS & AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Brandon Evans ("**Plaintiff**"), a North Carolina resident, took a cruise to The Bahamas in November 2009, and decided to call home from a payphone in Nassau. Plaintiff picked up the phone, swiped his debit card, and placed three calls with the assistance of an operator, allegedly associated with Defendant BBG Communications, Inc. ("**BBG Communications**").[1] Plaintiff had no information about the per-minute rate for a phone call from Nassau to North Carolina, other than a sticker placed on the phone by an anonymous third party that allegedly stated, "US/International Calls ***from*** $.69 per minute."[2] [FAC ¶ 11 (emphasis added).] Plaintiff, despite his admitted lack of information about rates, did not bother to ask the operator how much his calls would cost.

After he learned the cost of the calls, presumably by reviewing his debit card statement, Plaintiff suffered buyers' remorse because he subjectively believed that the calls cost too much. Instead of taking responsibility for having made the phone calls without first finding out the cost for those calls, Plaintiff has decided to sue BBG Communications.

---

[1] As BBG Communications has informed counsel for Plaintiff on two separate occasions, BBG Communications does not operate in The Bahamas and did not carry the calls upon which Plaintiff bases his First Amended Complaint. Despite providing counsel for the Plaintiff with the name of the entity that did operate in The Bahamas and carried the Plaintiff's calls, Plaintiff persists in his meritless persecution of BBG Communications.

[2] It is important to note that for a second time, Plaintiff fails to allege that this sticker was placed on the phone by BBG Communications ***or that it specifically referred to use of the pay phone itself***. Plaintiff does not make such allegations because, as he is aware from the face of the sticker itself, the sticker related to a prepaid calling card, not the pay phones in question.

In his original Complaint, Plaintiff attempted to state six (6) claims—including claims for violation of § 201 of the Federal Communications Act ("**FCA**") and California's Unfair Competition Law ("**UCL**")—against BBG Communications on the grounds that the rates charged for phone calls from The Bahamas to North Carolina were "excessive." The Court dismissed the Complaint in its entirety, in part because Plaintiff could not pursue a claim based on "excessive" fees in this Court.

In his First Amended Complaint ("**FAC**"), Plaintiff attempts to assert three state law claims, for violation of the UCL, breach of an implied contract, and conversion. Despite the Court's order, Plaintiff inexplicably maintains some remnants of his previously dismissed allegations of "excessive" rates. Those allegations fail to state a claim for the same reasons that Plaintiff's original Complaint failed. Plaintiff also attempts to assert claims based on a new factual theory, namely BBG Communications' alleged failure to disclose its rates and certain fees to him. Plaintiff's new failure to disclose theory is equally unavailing.

First, each of Plaintiff's claims poses constitutional problems. Plaintiff, a North Carolina resident, purports to apply California law to a phone call made from The Bahamas, a sovereign nation, to North Carolina, a sovereign state. It is unclear how it could possibly be reasonable to apply California law to such a claim. This is especially clear when one remembers that Plaintiff attempts to plead a class action on behalf of any American citizen who placed a call from any BBG Communications payphone from anywhere in the world to anywhere in the United States. Essentially, Plaintiff asks the Court to export and apply California's laws not only to the other 49 states and the District of Columbia, but presumably to every nation in the world in which BBG Communications allegedly operates. California cannot set international telecommunications policy or prices, nor is it reasonable to

ask this Court to preside over a case that would require it to undertake an analysis of the laws of each of the United States, the District of Columbia, and presumably numerous foreign countries.

Second, each of Plaintiff's claims fails on its merits. Briefly, Plaintiff's UCL claim fails because BBG Communications' practices are not unfair. BBG Communications had no obligation to automatically disclose its alleged rates to Plaintiff. On the contrary, if Plaintiff was concerned about the cost for the calls that he made, all Plaintiff had to do was ask the operator. He did not do so, and cannot now sue BBG Communications after the fact because he disapproves of the rates. Moreover, Plaintiff fails to allege facts showing that he justifiably relied on any statement by BBG Communications; rather, he merely claims to have relied on a sticker that was admittedly placed on the payphone by an unidentified third party.

Plaintiff's breach of implied contract claim similarly fails. If Plaintiff is alleging a breach of an implied-in-fact contract, then his claim fails because he has not pled sufficient information about an alleged contract between himself and BBG Communications. If Plaintiff is alleging a breach of an implied-in-law contract, then his claim fails because such a claim rises and falls with his other substantive claims, particularly his UCL claim. Because Plaintiff cannot state a claim for violation of the UCL, he similarly cannot state a claim for breach of an implied-in-law contract.

Finally, Plaintiff's conversion claim fails because Plaintiff does not allege a specific, identifiable sum of money that was taken from him. Rather, Plaintiff's conversion claim, at its core, is based on a theory that BBG Communications overcharged him for the calls that he placed. An alleged overcharge will not give rise to a claim for conversion.

In sum, Plaintiff has again failed to state a claim against BBG Communications. Because Plaintiff has twice tried and now twice failed to state a claim, BBG Communications respectfully requests that the Court dismiss Plaintiff's FAC, this time with prejudice.

## II.

## FACTS

### A. BBG Communications.

Plaintiff alleges that BBG Communications is a Delaware Corporation with its principal place of business in California. [FAC ¶ 7.] Plaintiff alleges that BBG Communications "offers payphone services typically found in airports, cruise terminals, and hotels and provides operator-assisted calls service." [*Id.* ¶ 9.] Plaintiff further alleges that BBG Communications operates its services from its offices in San Diego, and that it sets its "policies regarding how rates and fees are disclosed to customers . . . in San Diego, California." [*Id.* ¶ 11.] Plaintiff, however, never alleges that BBG Communications itself operates in The Bahamas, from where the phone calls giving rise to this lawsuit originated, nor does he allege that BBG Communications sets its rates in California.[3]

### B. Plaintiff's Phone Calls From The Bahamas.

Plaintiff, a North Carolina resident, took a cruise to The Bahamas in November 2009. [FAC ¶ 12.] During an excursion to Nassau in The Bahamas, Plaintiff decided to call his home in Shallotte, North Carolina from a payphone. [*Id.* ¶¶ 6, 12.] There was a sticker on the payphone from which Plaintiff made the phone

---

[3] Again, Plaintiff does not make such a specific allegation because he cannot. As BBG Communications has twice informed counsel for Plaintiff, BBG Communications does not operate in The Bahamas and did not carry the calls upon which Plaintiff bases his FAC.

call stating "US/International Calls ***from*** $.69 per minute." [*Id.* ¶ 12 (emphasis added).] Plaintiff does not—and cannot in good faith—allege that BBG Communications placed the sticker on the payphone or otherwise sponsored it, or that the sticker related to the cost of using the pay phone.[4] Instead, he summarily alleges with no factual support that "BBG is aware that payphone owners provide partial and inaccurate rate and fee information to entice consumers to use the service and knows that this information is incomplete and/or inaccurate." [*Id.* at ¶ 13.]

Plaintiff, in alleged reliance on a sticker placed on the payphone by some unidentified third party, placed three calls to his family in the United States. [*Id.* ¶¶ 14-15.] The first two calls lasted approximately one minute and the third lasted approximately two minutes. [*Id.* ¶ 15.] Plaintiff claims that BBG Communications charged his debit card in the amounts of $1.95 and $41.89 for the first call, $1.95 and $41.91 for the second call, and $1.95 and $41.94 for the third call. [*Id.* ¶ 16.] Plaintiff claims that he was "shocked" by these charges because he was never "informed of the actual per-minute rates" or "informed that he would be charged additional fees in connection with the call." [*Id.* ¶ 17.] Notably, however, Plaintiff does not allege that he ever asked the operator assisting him with his calls to provide this information at any point. [*See id.* ¶ 14.]

**C. Plaintiff's Original Complaint Against BBG Communications.**

Based on his phone calls from The Bahamas to North Carolina, Plaintiff filed a Complaint alleging six causes of action against BBG Communications. Plaintiff claimed that BBG Communications violated §§ 201(b) and 226(h) of the FCA, violated the UCL, engaged in unjust enrichment, and

[4] Again, Plaintiff does not make such allegations because as he is aware from the face of the sticker itself that the sticker related to prepaid calling cards, not the pay phones in question.

committed the tort of conversion. He also requested declaratory relief. Each of Plaintiff's claims was based on the allegation that the charges assessed for the three calls were "excessive." [Docket No. 1.]

BBG Communications moved to dismiss Plaintiff's Complaint, and the Court dismissed Plaintiff's Complaint in its entirety. [Docket Nos. 5, 12.] The Court granted Plaintiff leave to amend. [*Id.* at 12.]

### D. Plaintiff's Amended Complaint Against BBG Communications.

Plaintiff filed his FAC on July 16, 2010. [Docket No. 13.] In the FAC, Plaintiff attempts to shift the focus of his allegations from BBG Communications' allegedly "excessive" fees to BBG Communications' alleged failure to disclose its fees to him. Plaintiff thus asserts three claims based exclusively on California law. First, Plaintiff claims that BBG Communications violated the unfair prong of the UCL because it charges "excessive, undisclosed, and unfair fees in connection with long-distance phone calls made through payphones serviced by Defendant." [FAC ¶ 32.] Second, Plaintiff asserts a claim for "breach of implied contract" on the grounds that "Defendant charged and unjustifiably retained excessive sums of money from Plaintiff through charging Plaintiff undisclosed fees and charges in connection with their payphone services." [*Id.* ¶ 37.] Finally, Plaintiff claims that BBG Communications committed the tort of conversion by "by imposing undisclosed fees and charges." [*Id.* ¶ 41.]

## III.

## PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

### A. Standard For A Rule 12(b)(6) Motion To Dismiss.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of claims asserted in a complaint. A claim should be dismissed where

there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 969, 699 (9th Cir. 1988). A plaintiff must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint must at least allege sufficient facts "to raise a right to relief above a speculative level." *Id. See also Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

**B. <u>Each Of Plaintiff's Claims Fails Because Applying California Law To A Phone Call Made From The Bahamas To North Carolina Would Violate The Due Process Clause Of The United States Constitution.</u>**

The Due Process Clause limits the states' ability to apply their laws to out-of-state conduct. The Supreme "Court has invalidated the choice of law of a State which has had no significant contact or significant aggregation of contacts, creating state interests, with the parties ***and*** the occurrence or transaction." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981) (emphasis added). A state's choice of law may "violate the Constitution because it is so totally arbitrary or . . . fundamentally unfair to a litigant that it violates the Due Process Clause. If the forum court has no connection to the lawsuit other than its jurisdiction over the parties, a decision to apply the forum State's law might so frustrat[e] the justifiable expectations of the parties as to be unconstitutional." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 837, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) (internal citations and quotations omitted and alterations in original).

Here, Plaintiff is a North Carolina resident. [FAC ¶ 6.] California has no interest in protecting him, a non-California resident. Furthermore, Plaintiff's entire Complaint is based on three phone calls originating in Nassau and terminating

in North Carolina. [Id. ¶¶ 12-16.] Plaintiff attempts to connect the Bahamian phone calls to California by alleging that "[t]he policies regarding how rates and fees are disclosed to customers are determined by BBG's officers in San Diego, California." [Id. ¶ 11.] Plaintiff, however, cannot ignore the fact that the conduct that forms the basis of his FAC—an alleged sticker placed on a payphone in The Bahamas by an unidentified third party, and Plaintiff's use of that payphone—***occurred in the Bahamas***, not California. California thus has no connection whatsoever to the transaction forming the basis of his FAC and, as a matter of constitutional principle, California's laws do not apply. *Tidenberg v. Bidz.com, Inc.*, No. 08-5553, 2009 U.S. Dist. LEXIS 21916 at * 10 (C.D. Cal. March 4, 2009) ("Apparently, Plaintiff believes that because Bidz.com's principal place of business is in California, a fact that Defendants concede, the Court can presume that any false and misleading statements emanated from California. But the bulk of authority counsels against making such an assumption. Although the fact that Bidz.com does business in California gives California personal jurisdiction over Bidz.com, the Supreme Court has specifically admonished that the existence of personal jurisdiction over a defendant does not alone permit application of the forum law to the claims of nonresident plaintiffs."); *Priyanto v. MS/Amsterdam*, No. 07-3811, 2009 U.S. Dist. LEXIS 7849 at *6 (C.D. Cal. Jan. 23, 2009) (noting that "the UCL did not apply to claims brought by nonresident plaintiffs challenging their employer's failure to pay overtime wages as required under federal law for work performed outside of California. The employer's principal place of business and, presumably, place of management decisions, was in California, yet the court found that irrelevant."); *Doe v. Wal-Mart Stores, Inc.*, No. 05-7307, 2007 U.S. Dist. LEXIS 98102 (March 30, 2007) ("To the extent the non-California Plaintiffs are alleging violations of Section 17200 based on conduct that occurred in factories in foreign countries, such conduct is not within the reach of the statute.").

Nonetheless, Plaintiff asks this Court to apply California law across both international and state lines to a call made from a sovereign nation, The Bahamas, to a sovereign state, North Carolina. Plaintiff goes so far as to ask this Court to apply California law to regulate stickers on payphones that are physically in The Bahamas.[5] California has no connection to, or interest in, the calls that form the basis of Plaintiff's FAC, nor would BBG Communications expect that California's law would apply to its alleged conduct in The Bahamas. Moreover, Plaintiff has made no attempt to claim that BBG Communications' alleged conduct was illegal under Bahamian law, likely because Bahamian law does not appear to require the disclosures upon which Plaintiff seeks to impose liability. To date, BBG Communications has found no Bahamian law that would require the disclosures that Plaintiff seeks to impose here, suggesting that a conflict exists between Bahamian and California law as it is alleged by Plaintiff.[6] Given California's lack of contacts with the transactions at issue in Plaintiff's FAC, and the likely conflict with Bahamian law if Plaintiff's allegations regarding the law are correct, it would be unconstitutional to apply California law. Thus, BBG Communications respectfully requests that the Court dismiss each of Plaintiff's claims based on California law.

**C. <u>Plaintiff's Claim For Violation Of Section 17200 Fails.</u>**

---

[5] Moreover, Plaintiff asks this Court to certify a class consisting of "all United States citizens who placed a phone call from a BBG serviced payphone from any destination to a destination inside the United States." [FAC ¶ 22.] Thus, should this case survive and proceed to a motion for class certification, this Court would need to enlarge the analysis in the main text to include not only the laws of The Bahamas and California, but also the laws of the each of the remaining 49 states, the District of Columbia, and every international location in which BBG Communications allegedly operates. Such a task would render this action unmanageable.

[6] As set forth in Section III(C)(2), *infra*, despite Plaintiff's allegations to the contrary, California law does not require the disclosures that Plaintiff seeks to impose on BBG Communications in this case.

The UCL prohibits any unlawful, unfair, or fraudulent business practice in California. CAL. BUS. & PROF. CODE § 17200. Plaintiff claims that BBG Communications violated the UCL and engaged in an "unfair" business practice because it charges "excessive, undisclosed, and unfair fees in connection with long-distance phone calls made through payphones serviced by Defendant." [*FAC* ¶ 32.] This claim fails for four reasons. First, as this Court has already determined, Plaintiff may not use the UCL to circumvent § 201(b) of the FCA. Moreover, to the extent that he attempts to use the UCL to challenge BBG Communications' alleged rates, Plaintiff's UCL claim is preempted. Second, Plaintiff's claim based on the alleged "undisclosed" fees fails because BBG Communications has no duty to disclose the exact amount of its alleged rates based on the allegations in the FAC. Third, Plaintiff's claim fails the "unfair" prong test under the UCL. Finally, Plaintiff does not adequately plead justifiable reliance.

**1. Plaintiff May Not Use the UCL to Circumvent the Effect of § 201(b) of the FCA.**

In ruling on BBG Communications' motion to dismiss Plaintiff's original Complaint, this Court held, citing *North County Communications Corp. v. California Catalog & Technology*, 594 F.3d 1149 (9th Cir. 2010), that there is no private right of action under § 201(b) of the FCA absent a prior determination of reasonableness from the FCC. Thus, the Court held that Plaintiff cannot file suit to determine whether BBG Communications' practices are unjust and unreasonable under either § 201(b) or state law without first seeking a determination from the FCC: "Plaintiff may not circumvent the structure of the FCA by pursuing a claim under the UCL. . ." [Order filed June 18, 2010, Docket. No. 12 at 2-5; *see also Blanks v. Shaw*, 171 Cal. App. 4th 336 (2009) (where dispute must first be heard by administrative body, litigant may not circumvent that pre-suit requirement by pursuing a cause of action under the UCL).]

Despite the Court's order, Plaintiff persists in using the UCL to challenge the reasonableness of BBG Communications' alleged charges and practices (*i.e.*, its disclosures). [*FAC* ¶ 32.][7] Plaintiff, however, has not made any attempt to first resolve his concerns before the FCC. Thus, to the extent that Plaintiff's UCL claim continues to challenge the reasonableness or fairness of BBG Communications' alleged rates and/or practices, it should be dismissed.

In addition to the reasoning set forth in this Court's June 18, 2010 Order, Plaintiff's claim that BBG Communications' charges are "excessive" and therefore unfair under the UCL is preempted by the FCA. Congress, in enacting § 201 of the FCA, intended to foster free market competition. To the extent that Plaintiff's UCL claim would require BBG Communications to allegedly charge a lower fee for telecommunications services regardless of market conditions, it interferes with the FCA and is therefore preempted. *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), sets forth the analysis for the implied conflict preemption doctrine applicable here: "Under the obstruction strand of conflict preemption, an aberrant or hostile state rule is preempted to the extent it actually interferes with the 'methods by which the federal statute was designed to reach [its] goal.'" *Ting*, 319 F.3d at 1137 (citing *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S. Ct. 805; 93 L. Ed. 2d 883 (1987)).[8] As discussed in detail in *Ting*, 319 F.3d at 1131-46, the FCA's intended purpose was to protect consumers from unjust and unreasonable fees, and its chosen method for achieving that goal was to allow the free market to "enforce"

---

[7] Section 201(b) of the FCA provides "All ***charges, practices***, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful". 47 U.S.C. § 201(b) (emphasis added).

[8] The usual presumption against preemption is not applicable where, as here, there is a history of federal presence in regulating long-distance telecommunications. *Ting*, 319 F.3d at 1136.

§ 201. Plaintiff does not state any facts to rebut the presumption that BBG Communications' alleged charges are a product of that free market competition. Thus, any state law that would require BBG Communications to change its alleged fee structure artificially and without regard to the market conditions within which BBG Communications allegedly operates would directly interfere with the FCA's method of achieving its goal and would, accordingly, be preempted. *See also Qwest Corp. v. Arizona Corp.*, 567 F.3d 1109, 1118-20 (9th Cir. 2009) (holding FCA preempts state laws attempting to lower rates).

Moreover, Plaintiff's claim that BBG Communications' alleged fees are "excessive" falls outside of the scope of the UCL for the same reasons that it is preempted by the FCA. Where the legislature intends for the market to dictate what is a fair and reasonable price for goods or services—precisely as Congress intended with the FCA—a UCL action alleging that the price is "too high" or "excessive" does not lie. *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1157-63 (2000) (legislature's failure to limit charges for optional service can reasonably be thought to reflect a legislative intention to permit such charges to be regulated only by free market forces). The UCL was not designed to regulate market prices or allow the judiciary to review a legislature's decisions with regard to economic policies. *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1508-09 (1999) ("We may not substitute our judgment for that of the Legislature when it appears that that body has deliberately chosen not to impose a monetary limitation. . . . It is the Legislature's function, not ours, to determine the wisdom of economic policy." (internal citations and quotations omitted)). Thus, to the extent that Plaintiff attempts to use the UCL to claim that BBG Communications' alleged charges are unfair because they are

"excessive," his claim fails because it interferes with Congress's decision to let the market dictate those charges for telecommunications services.[9]

**2. BBG Communications Has No Duty To Disclose The Exact Amount Of Its Fees.**

Because Plaintiff cannot challenge the reasonableness of BBG Communications' alleged fees, as set forth above, he must accept that they are fair. Thus, the FAC is reduced to challenging the propriety of BBG Communications' alleged failure to disclose the exact charges associated with Plaintiff's calls.

Absent a legal requirement or other basis that would give rise to a duty to disclose, an alleged non-disclosure is not actionable under the UCL. *See Berryman v. Marit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (to state

---

[9] Finally, even if a UCL claim could lie with respect to Plaintiff's claims that BBG Communications' charges are "excessive," the Court should abstain from deciding that issue because to do so would require the Court to undertake an extensive analysis of the international telecommunications market. *See McKell v. Washington*, 142 Cal. App. 4th 1457, 1473 (2006) (discussing the abstention doctrine applicable in cases involving matters of complex economic policy); *Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 794 (2001) ("Where a UCL action would drag a court of equity into an area of complex economic policy, equitable abstention is appropriate."); *California Grocers Assn. v. Bank of America*, 22 Cal. App. 4th 205 (1994), 218-19 (whether service fees charged by banks are too high and should be regulated is a question of economic policy, which is a task left to the administrative agency who has decided that charges should be arrived at by each bank on a competitive basis). In fact, such an analysis of the international telecommunications market is best left to the FCC, the federal agency that "is 'expected to serve as the single Government agency with unified jurisdiction and regulatory power over all forms of electrical communication, whether by telephone, telegraph, cable, or radio.'" *Ellis v. Tribune TV Co.*, 443 F.3d 71, 86 (2d Cir. 2006) (quoting *United States v. Sw. Cable Co.*, 392 U.S. 157, 168 (1968)). Thus, even if Plaintiff were entitled to use the UCL to challenge the amount of BBG Communications' rates, that issue should be referred to the FCC pursuant to the primary jurisdiction doctrine. *See, e.g., Gilmore v. Southwestern Bell Mobile Sys.*, 210 F.R.D. 212, 221 (N.D. Ill. 2001) ("Technical issues about tariffs and questions about the reasonableness of tariffs, rates, and filed practices are generally within the particular expertise of the FCC and the regulation of such involves exercising agency discretion.").

a UCL claim based on a failure to disclose, a plaintiff must allege that the defendant owes a duty to disclose to the plaintiff). A duty to disclose arises under four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*Heliotis v. Schuman*, 181 Cal. App. 3d 646, 651 (1986). Here, Plaintiff does not allege that he is in a fiduciary relationship with BBG Communications, nor does he allege that BBG Communications actively concealed the exact amount of its charges from Plaintiff. Thus, he must intend to rely on either the second or fourth circumstances set forth in *Heliotis* to allege that a duty to disclose exists. The FAC, however, fails to allege facts to support the existence of a duty to disclose under either of them, as follows.

**a. <u>BBG Communications Did Not Have Exclusive Knowledge About Its Charges.</u>**

Plaintiff knew that he would be assessed charges because he used a "payphone" and swiped his debit card before placing each of the three calls that form the basis of his FAC. [FAC ¶ 14.] If more specific fee information was material to him, all Plaintiff had to do to reasonably discover that information was ***ask*** one of the three live operators with whom he spoke before his calls were connected. Plaintiff does not allege that he asked the operator for pricing information. [*See* FAC ¶¶ 14-15. *See also Warner Const. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1970) (one instance in which duty to disclose arises is where facts are known or accessible only to defendant, and defendant knows they are not known to ***or reasonably discoverable by plaintiff***." (emphasis added)).]

Plaintiff cites no case where a consumer requested services, provided his credit or debit card for payment, did not ask how much the services would cost, accepted the benefit of the services, and then brought a successful UCL claim on the grounds that the services were more expensive than he subjectively expected. No court has ever accepted such a nonsensical claim. In fact, several district courts in this Circuit have considered and rejected just such a theory. Where a telecommunications carrier discloses that charges will be assessed, and those charges vary by customer—perhaps because of differences in customer location or otherwise—the carrier is not required to disclose the exact amount of the charge in advance. *See, e.g., Janda v. T-Mobile*, No. C 05-03729, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009); *Smale v. Cellco Partnership d.b.a. Verizon Wireless*, 547 F. Supp. 2d 1181 (W.D. Wash. 2008); *Riensche v. Cingular Wireless LLC d.b.a. AT&T Wireless*, 2009 U.S. Dist. LEXIS 95802 (W.D. Wash. Oct. 2, 2009). Thus, because BBG Communications' alleged rates indisputably vary by the location of a customer and the location in which a call is to terminate, BBG Communications had no duty

to disclose its alleged rates, especially where Plaintiff did not even bother to ask any of the three operators with whom he spoke about the rates he would pay. *See Riensche*, 2009 U.S. Dist. LEXIS 95802 at *20 n. 6 (refusing to impose an obligation to disclose the amount of surcharges in advance because the rates included in surcharge vary by location and change from time to time); *Smale*, 547 F. Supp. 2d at 1187 ("Customers who contacted Verizon with questions about the nature of the fee might have a claim if Verizon refused to provide such information or made misleading statements, but that is not the case before the court. . . .").

**b. <u>BBG Communications Did Not Make Partial Representations Or Suppress Material Facts.</u>**

Plaintiff summarily alleges that unspecified "payphone owners provide partial and inaccurate rate and fee information to entice consumers to use the service and [BBG Communications] knows that this information is incomplete and/or inaccurate." [FAC ¶ 13.] At best, this conclusory allegation of "incomplete and/or inaccurate" information appears to be based on the allegation that an unidentified third party placed a sticker on the payphone that Plaintiff used stating that rates associated with the sticker's product started from $0.69 per minute. [FAC ¶ 12.] Plaintiff further alleges that "[d]espite the fact that BBG knows that when the customer connects to the operator, the consumer is relying on partial information and is unaware of numerous ancillary charges and the exact rate-per-minute that they will be charged, BBG does not disclose this information to the customer at any point during the transaction." [*Id.* ¶ 14.] Plaintiff, however, does not attribute the sticker to BBG Communications. In other words, Plaintiff alleges that BBG Communications' duty to disclose its exact fee information arises because some unidentified third party provided minimum rate information about some undefined telecommunications service on the payphone equipment Plaintiff was using.

These allegations do not give rise to a duty to disclose. It must be the ***defendant*** that made partial representations, not a third party outside of the transaction. *See Heliotis*, 181 Cal. App. 3d at 651 ("when the ***defendant*** makes partial representations…" (emphasis added)); *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1164-65 (2005) (". . . intentional concealment exists when ***a party to the transaction,*** who is under no duty to speak, nevertheless does speak and suppresses facts which materially qualify the facts stated." (emphasis added)). Plaintiff does not allege that BBG Communications made any representations at all about its alleged fees.

Further, as set forth above, BBG Communications did not suppress any facts. Plaintiff knew he would be assessed charges for making his calls, and he was. If further details regarding fees were material to him, then he could have asked one of the three operators with whom he spoke before placing a call on three separate occasions. Thus, Plaintiff has failed to plead sufficient facts to give rise to a duty to disclose, and his UCL claim should be dismissed.

**3. <u>BBG Communications' Business Practices Are Not Unfair.</u>**

The correct test under the "unfair" prong in a consumer case is an unsettled question in California. *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1045 (2008); *Lozano v. AT&T Wireless Services, Inc.* 504 F.3d 718, 735 (9th Cir. 2007) ("California's unfair competition law, as it applies to consumer suits, is currently in flux."). Ninth Circuit courts, however, are limited to two possible definitions of an unfair business practice from which to choose: a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer (*Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980)), or a practice that undermines a legislatively declared policy or threatens competition (*Cel-Tech Communications, Inc. v. Los Angeles Cellular

*Telephone Co.*, 20 Cal.4th 163, 185 (1999)). *Lozano*, 504 F.3d at 736 (leaving district courts only two options in a consumer case: the balancing test noted in *Motors, Inc.* or the *Cel-Tech* test).[10]

Plaintiff's allegations are wholly insufficient to meet either test. Plaintiff fails to meet the *Motors, Inc.* test because the only impact on him was that he was surprised that the charges BBG Communications allegedly assessed for his three calls were more expensive than he expected, based on a sticker that a third party placed on the payphone he used. BBG Communications does not disclose all of its exact fee information in advance because, *inter alia*, it is impossible to do so until the consumer tells the operator where he or she would like to call. Moreover, it is impossible to know exactly what a third party placed on a given phone at an international payphone bank that BBG Communications allegedly services. Once the customer tells the operator where he or she wants to call, the customer has already provided his or her credit or debit card information and understands that he or she will be charged a fee. If the customer wishes to know more specific information about those fees or confirm random statements unattributed to BBG Communications before proceeding with the call, all he or she has to do is ask. BBG Communications cannot be held liable based on Plaintiffs' failure to ask a simple question. If all a plaintiff has to allege is that he forgot to ask how much the defendant's products or services cost after he handed over his credit or debit card for payment, every company would be subject to a UCL suit, regardless of whether its

---

[10] Even under the unfairness test set forth in *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1400 (2006) (which is generally not used by District courts), Plaintiff's claim would fail because, as set forth above, his alleged injury is one that he could have reasonably avoided if he had simply asked how much he would be charged before he authorized the connection.

prices are a product of free market competition. The UCL was not intended to apply to such situations.

Plaintiff similarly fails to meet the *Cel-Tech* test because he does not allege that BBG Communications' alleged practices threaten competition. Without such allegations about the long-distance calling market in The Bahamas to give context to BBG Communications' alleged practices, he fails to allege a violation of this prong of the UCL.

Further, no matter which test the Court adopts, so long as (1) Plaintiff does not allege that BBG Communications is prohibited by law from charging the fees in the first instance (he does not) and (2) BBG Communications' alleged disclosures are not false or misleading (they are not), then a UCL claim under the unfairness prong necessarily fails. *See Janda*, 2009 WL 667206, *9 (citing *Spiegler*, 552 F.Supp.2d at 1046). Thus, Plaintiff's UCL claim should be dismissed.

**4. <u>Plaintiff Does Not Sufficiently Allege Justifiable Reliance.</u>**

Plaintiffs asserting UCL causes of action based upon an alleged misrepresentation or omission "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In Re Tobacco II Cases*, 46 Cal.4th 298, 306 (2009). Not only must the plaintiff allege reliance, he must also allege facts that demonstrate his reliance was reasonable, "i.e. circumstances were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332 (1986). "If the conduct of the complaining party in light of his own intelligence and information, **or**

**ready available information**, was manifestly unreasonable, he will be denied recovery." *Kahn v. Lischner*, 128 Cal. App. 2d 480, 489, (1954) (emphasis added).

Here, Plaintiff attempts to allege justifiable reliance as follows: "Plaintiff relied on this per-minute rate [*i.e.*, presumably the rate noted on the sticker] and the fact that no other fees were disclosed on the sticker when deciding to use the payphone's service." [FAC ¶ 14.] Plaintiff, however, does not identify who placed the stickers on the payphones. [*Id.* ¶ 12.] More specifically, he does not allege that BBG Communications placed any such stickers on the payphones. [*Id.*] Nor does he allege that the sticker related to the payphones versus some other competing form of phone service, *i.e.*, prepaid calling cards. In other words, Plaintiff alleges that he relied on a sticker placed on a payphone by some unidentified third party, not BBG Communications, that related to some form of unidentified phone service. BBG Communications' fee information was readily available to Plaintiff had he bothered to ask one the operators about it. Under these circumstances, his reliance on the stickers without an independent inquiry was simply not reasonable. Thus, Plaintiff fails to allege that ***BBG Communications'*** "misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct," and his UCL claim should be dismissed for failure to allege justifiable reliance.

**D. <u>Plaintiff's Claim For Breach Of Implied Contract Fails.</u>**

Plaintiff has attempted to plead a claim for "breach of implied contract" without specifying whether he seeks damages for an implied-in-fact contract, or an implied-in-law contract, otherwise known as a quasi contract. In either case, Plaintiff's claim fails.

**1. <u>Plaintiff's Claim For Breach Of An Implied-In-Fact Contract Fails.</u>**

To the extent that Plaintiff intends to plead a claim for breach of an implied-in-fact contract, he must plead the elements of a cause of action for breach of express contract. *Gomez v. Lincare*, 173 Cal.App.4th 508, 525 (2009). Those elements are: (1) the existence of a contract, (2) his performance under the contract or excuse for non-performance, (3) the defendant's breach, and (4) the resulting damages. *Otworth v. Southern Pac. Transp. Co.*, 166 Cal.App.3d 452, 458 (1985). Plaintiff has not attempted to provide any information about any alleged contract between him and BBG Communications, including the terms of any such contract or his performance thereof. Thus, he has not pled a claim for breach of an implied-in-fact-contract, and his claim for breach of implied contract should be dismissed.

**2. <u>Plaintiff's Claim For Breach Of An Implied-In-Law Contract Fails.</u>**

Unlike an implied-in-fact contract,

> The so-called "contract implied in law" in reality is not a contract. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice. Quasi-contractual recovery is based upon benefit accepted or derived for which the law implies an obligation to pay. Where no benefit is accepted or derived there is nothing from which such contract can be implied.

*Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 (1953) (internal citations and quotations omitted). A cause of action for quasi-contract is merely a legal fiction that broadens the remedies available to a plaintiff. It does not create a contract or other rights where none existed. *See McBride v. Boughton*, 123 Cal.App.4th 379 (2004). In other words, a plaintiff's right to a quasi-contract remedy rises and falls with the other claims asserted in his complaint.

Here, Plaintiff's quasi-contract claim rises and falls with his substantive claim for violation of the UCL. As that claim fails, Plaintiff's quasi-contract claim also fails. Without the UCL claim, Plaintiff has alleged no basis upon which the law implies an obligation to pay. Moreover, Plaintiff has not pled that BBG Communications accepted an unrequited benefit. On the contrary, Plaintiff allegedly paid BBG Communications, and in exchange, BBG Communications allegedly connected his telephone calls from The Bahamas to North Carolina. Thus, Plaintiff's claim for unjust enrichment fails, and should be dismissed.

**E. <u>Plaintiff's Conversion Claim Fails.</u>**

"Conversion" is another word for "stealing." Plaintiff alleges that BBG Communications stole $128.83 from him in undisclosed fees and charges. [*FAC* ¶ 40-41.] Though not articulated in the FAC, Plaintiff presumably arrived at this figure by calculating the difference between the full amount he was charged ($131.59) and what he believes he should have been charged ($0.69 x 4 mins, or $2.76). This calculation does not support Plaintiff's claim for conversion for at least three reasons.

First, Plaintiff's calculation is contradicted by the allegations of his FAC. Plaintiff could not have reasonably believed that he would be charged exactly $2.76 in total for three separate international calls, because the alleged sticker on the payphone allegedly stated that the rate was ***from*** $0.69 per minute. [FAC ¶ 12.] In other words, Plaintiff could not have expected that he would have been charged only $0.69 per minute; rather, a reasonable person would have understood that he or she would have been charged ***at least*** $0.69 per minute.

Second, in order to state a claim for conversion of money, Plaintiff must be able to identify a specific identifiable sum that was wrongfully taken from

him. *See PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007); *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1491 (2006); *Vu v. Cal. Commerce Club*, 58 Cal. App. 4th 229, 235 (1997) (generalized claim for money not actionable as conversion). Plaintiff does not and cannot allege that he is owed a specific sum of money because his $131.59 is merely Plaintiff's estimation of his damages. Plaintiff cannot make a guess of what amount of money he believes was wrongfully taken from him; rather, he must be able to identify a sum with specificity. Plucking a figure out of the air, with no reasonable basis for it, is insufficient to state a claim for conversion of money.

Finally, Plaintiff's arithmetic undermines his claim—he is clearly still alleging that BBG Communications overcharged him (*i.e.*, by charging him more than $0.69 per minute) for his three calls. Claims based on an overcharge do not give rise to a cause of action for conversion. *See* Order filed June 18, 2010 [Doc. No. 12 at 5-6]; *McKell*, 142 Cal. App. 4th at 1491-92 ("Plaintiffs cite no authority for the proposition that a cause of action for conversion may be based on an overcharge. Consequently, they have failed to demonstrate that they have stated a cause of action for conversion."); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009) (granting motion for summary judgment as to conversion claim based on overcharging); *DSU Aviation, LLC v. PCMT Aviation, LLC*, No. 07-1478, 2007 U.S. Dist. LEXIS 86835 (N.D. Cal. Nov. 14, 2007) (granting motion to dismiss conversion cause of action without leave to amend). Further, to the extent his conversion claim is based on the allegedly undisclosed ancillary fees, Plaintiff cannot proceed because he does not allege a specific and identifiable sum of money in fees and charges, as discussed above.

## IV.

## CONCLUSION

For the reasons explained above, BBG Communications respectfully requests that the Court dismiss Plaintiff's First Amended Complaint in its entirety. Furthermore, BBG Communications respectfully requests that the Court dismiss Plaintiff's claims with prejudice. Plaintiff has had two opportunities to plead a legally sufficient claim, and has failed to do so. Thus, any further amendment of the FAC would be futile.

Dated: July 30, 2010

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By s/Fred R. Puglisi

FRED R. PUGLISI

Attorneys for Defendant,
BBG Communications, Inc.