Eric J. Benink, Esq., SBN 187434
Mary K. Wyman, Esq., SBN 260104
KRAUSE KALFAYAN BENINK & SLAVENS, LLP
625 Broadway, Suite 635
San Diego, CA 92101
Tel.: (619) 232-0331
Fax: (619) 232-4019
eric@kkbs-law.com
mwyman@kkbs-law.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON EVANS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BBG COMMUNICATIONS, INC., a Delaware corporation, and DOES 1 - 10,<br><br>Defendants. | Case No. 310-cv-00542-H-NLS<br><br>**PLAINTIFF BRANDON EVANS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: August 30, 2010<br>Time: 10:30 a.m.<br>Courtroom: 13<br><br>Hon. Marilyn L. Huff |

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT....................................1

II. ALLEGATIONS....................................3

III. ARGUMENT....................................5

A. THE PLEADING STANDARD....................................5

B. BECAUSE CALIFORNIA HAS A STRONG INTEREST IN REGULATING THE CONDUCT OF COMPANIES DOING BUSINESS IN THIS STATE, APPLYING CALIFORNIA LAW IN THIS ACTION DOES NOT VIOLATE THE DUE PROCESS CLAUSE....................................5

C. EVANS HAS SUFFICIENTLY ALLEGED THAT BBG VIOLATED THE UCL....................................7

1. Evan's UCL Claim Does Not Circumvent § 201(b) of the FCA.........8

2. BBG's Failure to Disclose is Actionable....................................8

3. BBG's Actions are Properly Alleged as Unfair....................................10

4. Plaintiff is Not Required to Allege Justifiable Reliance....................11

D. EVANS' CLAIM FOR BREACH OF IMPLIED CONTRACT IS SUFFICIENTLY PLED....................................12

E. EVANS SUFFICIENTLY ALLEGES A CLAIM FOR CONVERSION AGAINST BBG....................................14

IV. CONCLUSION....................................15

# TABLE OF AUTHORITIES

## CASES

*Allstate Ins. Co. v. Hague*
(1981) 449 U.S. 302 .......... 6, 7

*Ashcroft v. Iqbal*
(2009) 556 U.S.___, 129 S. Ct. 1937 .......... 5

*Bell Atl. Corp v. Twombly*
(2007) 550 U.S. 544 .......... 5

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
(1999) 20 Cal.4th 163 .......... 10, 11

*Chandler v. Roach*
(1958) 156 Cal.App.2d 435 .......... 13

*Davies v. Krasna*
(1970) 12 Cal.App.3d 1049 .......... 13

*Ditropan XL Antitrust Lit.,*
(N.D.Cal. 2007) 529 F.Supp.2d 1098, fn.3 .......... 6

*Fimbres v. Chapel Mortgage Corp.*
(S.D. Cal. Nov. 20, 2009) WL 4163332 .......... 10

*Glenn K. Jackson, Inc. v. Roe*
(9th Cir. 2001) 273 F.3d 1192 .......... 10

*Gomez v. Lincare, Inc.*
(2009) 173 Cal.App.4th 508 .......... 12

*Heliotis v. Schuman*
(1986) 181 Cal.App.3d 646 .......... 8

*Janda v. T-mobile*
(N.D. Cal. Mar. 13, 2009) WL 667206 .......... 9

*Knievel v. ESPN*
(9th Cir. 2005) 393 F.3d 1068 .......... 5

*LiMandri v. Judkins*
(1997) 52 Cal.App.4th 326 .......... 8

*Linear Technology Corp. v. Applied Materials, Inc.*
(2007) 152 Cal.App.4th 115 .......... 8

*Lozano v. AT&T Wireless, Services, Inc.*
(9th Cir. 2007) 504 F.3d 718 .......... 10, 11

*Mattel, Inc.*
(C.D. Cal. 2008) 588 F.Supp.2d 1111 .......... 6

/ / /

*McBride v. Boughton*
(2004) 123 Cal.App.4th 379 .......... 13

*McKell v. Washington Mutual, Inc.*
(2006) 142 Cal.App.4th 1457 .......... 8

*Moss v. U.S. Secret Service*
(9th Cir. 2009) 572 F.3d 962 .......... 5

*Motor, Inc. v. Times Mirror Co.*
(1980) 102 Cal.App.3d. 735 .......... 11

*Natomas Gardens Inv. Group, LLC v. Sinadinos*
(E.D.Cal., 2010) WL 1659970 at *9 .......... 14

*Navarro v. Block*
(9th Cir. 2001) 250 F.3d 729 .......... 5

*Norwest Mortgage, Inc. v. Superior Court of San Diego, Co.*
(1999) 72 Cal.App.4th 214 .......... 7

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*
(2007) 157 Cal.App.4th 835 .......... 8

*Ohio Cas. Ins. Co. v. Harbor Ins. Co.*
(1968) 259 Cal.App.2d. 207 .......... 9, 10

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP.*
(2007) 150 Cal.App. 4th 384 .......... 14

*Phillips Petroleum Co. v. Shutts*
(1985) 472 U.S. 797 .......... 6, 7

*Princess Cruise Lines, Ltd. v. Superior Court*
(2009) 179 Cal.App.4th 36 .......... 11

*Schnall v. Hertz Corp.*
(2000) 78 Cal.App.4th 1144 .......... 11

*Smale v. Cellco Partnership*
(W.D. Wash. 2008) 547 F. Supp.2d 1181 .......... 9

*Smith v. State Farm Mutual Automobile Ins. Co.*
(2001) 93 Cal.App. 4th 700 .......... 10

*Sullivan v. Oracle Corp.*
(9th Cir. 2009) 557 F.3d 979 .......... 7

*Tobacco II Cases*
(2009) 46 Cal.4th 298 .......... 11, 12

*Riensche v. Cingular Wireless LLC d.b.a AT&T Wireless*
(W.D. Wash. Oct. 2, 2009) LEXIS 95802 .......... 9

///

*Runaj v. Wells Fargo Bank*
(S.D. Cal. 2009) 667 F.Supp.2d 1199........5

*Thomas v. Sprint Solutions, Inc.*
(N.D. Cal. March 30, 2010) WL 126189........9

*Tidenberg v. Bidz.com*
(C.D. 2010) WL 135580 at 12........6, 7

*Weitzenkorn v. Lesser*
(1953) 40 Cal.2d 778........13

*Williams v. Gerber Products Co.*
(9th Cir. 2008) 552 F.3d 934........8

*Yari v. Producers Guild of America Inc.*
(2008) 161 Cal.App.4th 172........12

**STATUES**

California Business and Professions Code
§17200........2

Federal Rules of Civil Procedure
12(b)(6)........5

# I.
# INTRODUCTION AND SUMMARY OF ARGUMENT

This is a class action brought by Plaintiff Brandon Evans ("Plaintiff" or "Evans") on behalf of a class of BBG Communications, Inc. [1] ("BBG") customers. While vacationing in the Bahamas, Evans found himself without cell phone reception and needed to call back to the United States. As he disembarked the cruise ship, Evans saw a bank of payphones offering phone calls starting from $.69 per minute. Like most consumers, Evans did not know the intricate setup of payphone services providers. He simply relied on the representations on the phone. After placing three phone calls and returning home from his vacation, Evans received a hefty bill for $139.59. No reasonable person would have ever anticipated such a bill, particularly given the stated rate of "from $.69". Evans could never have anticipated that BBG charged such outrageous ancillary fees, such as connection fees and a minimum number of minutes per call, for long-distance payphone calls serviced by BBG. Evans had no way of knowing that such charges even exist in connection with the payphone call because BBG does not disclose that there are ancillary fees at the time of the transaction.

In its opposition BBG attempts to blame its customers for failing to discover these ridiculous charges. Absurdly, BBG claims that consumers, such as Plaintiff, should have asked the operator about charges that they could not have known existed. But the reasonableness of Plaintiff's actions is a question for the trier of fact and inappropriate for a motion to dismiss. Moreover, BBG takes no responsibility for failing to inform their customers that they charge ancillary fees at any time in the transaction, including when the caller is speaking with BBG's operator. Rather, they take advantage of Plaintiff's ignorance of BBG's practices. Consumers all around the United States have suffered similar charges at the hand of BBG's unfair business practices.

---

[1] BBG states in a footnote that its counsel twice informed Evans' counsel that BBG does not operate in the Bahamas. BBG fails to disclose that after the Court entered the order dismissing the claims with leave, Evans' counsel contact BBG's counsel to request further information about BBG's claim so that Evans could review it. BBG's counsel stated that he would inquire whether BBG would be interested in providing further information, but never contact Evans' counsel with any information.

BBG argues that Evans is simply claiming that BBG charged him too high of a rate for the calls, and that, as held by this Court in its Order granting BBG's motion to dismiss his initial Complaint, Evans must first address his complaint with the FCC. But Evans' is not alleging that BBG's rates or charges are unreasonable, but rather that BBG's practice of charging consumers for undisclosed ancillary payphone fees is unfair. This distinction takes this case out of the FCC's purview.

BBG's remaining arguments are unpersuasive, as follows:

First, BBG asserts that Evans' claim violates the due process clause of the United States Constitution because Evans used a BBG serviced payphone in the Bahamas to make call to North Carolina. It attempts to convince this Court that it, a California company with all of its operations, billing and decision making centered in California, had no expectation of being sued here or being subjected to California law. Indeed, BBG is headquartered in San Diego, California, and it provides *all* of its operator, billing, and telecommunication services in San Diego. Further, BBG's management is located here and all contracts are drafted and executed in San Diego. BBG knew and even expected to be sued here in California and that it would be subject to California law.

Second, BBG argues that under the Unfair Competition Law, Cal. Bus.Prof. Code § 17200 ("UCL"), Evans must allege that BBG had a duty to disclose its ancillary charges and that Evans acted in reasonable reliance upon some misrepresentation. But BBG's arguments miss the mark. The UCL has three prongs. A business practice violates the UCL if it is a) unfair b) fraudulent or c) unlawful. *Only under the second "fraudulent" prong is there a requirement to plead reliance or a duty to disclose.* Here, Evans alleges that BBG's business practice violates the "unfair" prong, not the "fraudulent" prong. Thus, Evans need not allege reliance or duty to disclose. As for the substantive allegations under the UCL, Evans has pled a *prima facie* case that the undisclosed charges are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers in violation of the UCL. This issue is to be determined by the trier of fact and is not susceptible to a determination at the pleading stage.

Third, BBG asserts that Evan's claim for breach of implied contract fails because he fails to allege facts from which a contract may be implied. BBG further argues that Evans implied-in-

law allegations also fail because he has not sufficiently alleged that BBG violated the UCL. But, as Evans has alleged, by using BBG's payphone services and placing his calls, for example, Evans has sufficiently pled that the parties' conduct created an implied contract and that BBG breached this contract. In addition, because BBG violated the UCL, Evans has sufficiently pled an implied-in-law contract.

Fourth, BBG asserts that Evans complains that BBG charged him excessive per-minute telephone rates and not a specific, identified sum of money necessary for a claim for conversion. But Evans claims that he was charged for undisclosed ancillary fees that he was not aware of and therefore did not agree to. He does not claim that he was charged excessive rates. The alleged sum of money converted is susceptible to proof at trial, which is all that is required to plead conversion.

For each of the foregoing reasons, Evans respectfully requests that the Court deny the motion to dismiss in its entirety.

## II.
## ALLEGATIONS

BBG is a provider of operator services and a common carrier that contracts with airports, hotels, and other payphone service providers to provide long distance collect and credit card calls to customers using payphones that do not otherwise provide long-distance service. (Complaint, ¶ 9.)

BBG contracts and forms joint ventures with payphone owners in which the contracting parties share revenues from the long-distance calls. BBG's website states, for example, that "hotels entering into an agreement with BBG Communications, Inc. will allow it to handle every Operated Assisted Call and provide the hotel with a significant share of the revenue generated from these calls." Likewise, BBG "forms partnerships with airports…in an attempt to enhance the available options offered to its customers, while providing a reliable monthly revenue stream." The contracts are drafted and executed in California by BBG. (¶ 10.)

When a caller uses a payphone to make a long distance call serviced by BBG, the caller is connected with BBG's operator who assists the customer in making the connection. BBG charges

the customer's credit or debit card. BBG operates its services, including but not limited to the billing and telecommunication services, from its business offices in San Diego, California. BBG creates its policies regarding its disclosure of rates and fees to customers in San Diego, California. (¶ 11.)

On or about November 25, 2009, Evans was vacationing on a cruise in the Bahamas. Evans wished to call home, but did not have cell-phone service. (¶ 12.) After exiting the cruise ship in Nassau, Evans proceeded to a bank of pay phones located at the cruise ship terminal. Evans observed a yellow and black sticker on each of the pay phones stating US/International Calls from $.69 per minute. The pay phones did not disclose any other rates, fees, or charges. (¶ 12.) BBG is aware that payphone owners provide partial and inaccurate rate and fee information to entice consumers to use their service. (¶ 13.)

Evans relied on this per-minute rate and attempted to place a phone call to his family in the United States. Evans was connected to an operator. Despite BBG's knowledge of its outrageous ancillary charges, its practice is not to disclose these charges when customers interact with its operators. (¶ 14.) Evans placed three telephone calls for *a total of just four (4) minutes*. (¶ 15.) BBG unexpectedly charged Evans $1.95 for each of the three calls, $41.89 for the first call, $41.91 for the second call, and $41.94 for the third call. (¶ 16.) These charges included an undisclosed connection fee and minimum minutes charge. Plaintiff was shocked by these outrageous charges. At no time did BBG inform Evans of the actual fees and other ancillary charges at the time he made his telephone calls. Evans could not have known, or reasonably expected, that BBG would bill him for these undisclosed charges. BBG's business practice results in consumers paying BBG exorbitant and unexpected charges. (¶ 17.)

These abuses are echoed by consumers throughout the United States. Consumer web sites are brimming with customer complaints alleging similar gouging. Indeed, in the past three years, 611 consumers filed complaints with the San Diego office of the Better Business Bureau ("BBB"). (¶ 18.) The BBB issued BBG an F rating and has withheld BBB accreditation. BBG is aware of these abuses and has formed a department specifically to deal with customer complaints about rate

overcharges. (¶19.)

As a result of these deceptive practices, Evans was charged fees, totaling $139.59, for less than four minutes of telephone service. (¶¶ 16, 20.)

## III.

## ARGUMENT

### A. THE PLEADING STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed.R.Civ.P. 12(b)(6); *Runaj v. Wells Fargo Bank,* 667 F.Supp.2d. 1199 (S.D. Cal. 2009) citing *Navarro v. Block,* 250 F.3d 729, 731 (9th. Cir. 2001). A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct 1955 (2007). The court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Knievel v. ESPN,* 393 F.3d 1068 (9th Cir. 2005).

Notwithstanding this deference, a court need not accept legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. ____, 129 S. Ct. 1937 (2009). Thus, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements'" are not entitled to an assumption of truth. *Id.* at 1951.

Thus, for a complaint to survive a motion to dismiss, "the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009) citing *Iqbal*, 129 S.Ct. at 1949. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B. BECAUSE CALIFORNIA HAS A STRONG INTEREST IN REGULATING THE CONDUCT OF COMPANIES DOING BUSINESS IN THIS SATE, APPLYING CALIFORNIA LAW IN THIS ACTION DOES NOT VIOLATE THE DUE PROCESS CLAUSE

BBG contends that Evans' claims fail because applying California law in this action would violate the due process clause of the United States Constitution (Def. Brf. 7:10-9:17). BBG

claims that because Evans is a North Carolina resident, California has no interest in protecting him. (Def. Brf. 7:26-27) It further argues that California has no connection to the transaction forming the basis of his FAC - the use of the payphone - because it occurred in the Bahamas. (Def. Brf. 8:4-7) BBG's argument ignores the facts and misapplies the law.

In order for a "State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 818 citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-313 (1981). California has an interest in regulating businesses which operate within its borders and ensuring that these businesses comply with its laws. *See In re Mattel, Inc.*, 588 F.Supp.2d 1111, 1119-1120 (C.D.Cal. 2008) (denying motion to dismiss UCL claim based on allegation that defendant's executives were in California); *See also In re Ditropan XL Antitrust Lit.*, 529 F.Supp.2d 1098, fn.3 (N.D.Cal. 2007) ("Because Alza's principal place of business in California, it is reasonable to infer the alleged misconduct occurred within California. At this procedural stage, the Court will not dismiss Indirect Purchaser Plaintiffs' UCL claim for lack of standing"). California's interest is even greater where, as here, the alleged class includes California residents. *Allstate Ins. Co.*, 449 U.S. at 317-318.

Here, BBG operates all aspects of its services, including the operator, billing, and telecommunication services from its business offices in San Diego. (¶ 11.) BBG develops its policies regarding how rates and fees are disclosed to the customer in San Diego. ( ¶ 11.) Moreover, BBG enters into joint ventures and partnerships with domestic and international payphone service providers to provide long distance calls for payphone users. (¶10.) These contracts are drafted and executed in San Diego. (¶ 10.) Thus, the illicit activities emanate from, and the actors performing them are located in, San Diego.

The cases cited by BBG are unavailing. In *Tidenberg v. Bidz.com* the court stated that "[p]laintiff does not allege any specific facts linking Defendants' contacts with California to the claims Plaintiff asserts against them." *Tidenberg v. Bidz.com,* 2010 WL 135580 at 12 - 13

(C.D.Cal. 2010). This is distinguishable from Evans' numerous allegations of BBG's contacts with California listed above, which directly relate to Evans' claims. (¶¶ 10-11). Similarly, BBG relies on *Priyanto* [2] for the idea that a defendant's contacts with California are not sufficient where such contacts are based solely upon the fact that defendant's principal place of business is here. The *Priyanto* Court cited *Sullivan v. Oracle Corp.*, 547 F.3d 1177, 1187 (9th Cir. 2008) as its reasoning for this proposition. But the Ninth Circuit has since *withdrawn* its opinion in *Sullivan* and asked the California Supreme Court for help in deciding this issue. *Sullivan v. Oracle Corp.*, 557 F.3d 979 (9th Cir. 2009). The California Supreme Court has previously ruled that the UCL does not apply to claims with "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants <u>whose headquarters and principal places of operations are outside of California.</u>" *Norwest Mortgage, Inc. v. Superior Court of San Diego Co.*, 72 Cal. App. 4th 214, 225, (1999) (emphasis added).

Further, just because the phone call took place outside of California does not create a due process violation. Indeed, "[n]umerous cases have applied the law of a jurisdiction other than the situs of the injury where there existed some other link between that jurisdiction and the occurrence." *Allstate Ins. Co.,* 449 U.S. at 315.[3]

Moreover, when considering fairness in the due process context, an important element is the expectation of the parties. *Phillips Petroleum Co.,* 472 U.S. at 822. BBG has selected California as its principal place of business, has elected to make its rate disclosure policies here, and has California customers. It cannot deny that it expects to be sued in California under California law. *Allstate Ins. Co.*, 449 U.S. 302 at 317-318.

## C. EVANS HAS SUFFICIENTLY ALLEGED THAT BBG VIOLATED THE UCL.

---

[2] *Priyanto v. MS/Amsterdam*, 2009 U.S. Dist. LEXIS 7849 at *6 (C.D. Cal. Jan. 23, 2009)

[3] See, e. g., *Cardillo v. Liberty Mutual Ins.* Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947); *Alaska Packers Assn. v. Industrial Accident Comm'n*, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); *Rosenthal v. Warren*, 475 F.2d 438 (CA2), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973); *Clark v. Clark*, 107 N.H. 351, 222 A.2d 205 (1966); Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

Consistent with the holdings of California state courts, the determination of whether a business practice is deceptive, fraudulent, or unfair is rarely to be decided on a motion to dismiss. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938-939 (9th Cir. 2008); *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134-35 (Cal. Ct. App. 2007); *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1472 (Cal. Ct. App. 2006).

**1. Evans' UCL Claim Does Not Circumvent § 201(b) of the FCA.**

BBG claims that to the extent Evans' UCL claim continues to challenge the reasonableness or fairness of BBG's rates, it should be dismissed because such claims must be submitted to the FCC for determination in accordance with this Court's prior ruling. (Def. Brf. 11:4-6.) But this Court also granted Plaintiff leave to amend to allege UCL claims that do not "mirror" his prior section 201(b) claims. Evans has met the Court's requirement.

Indeed, Evans alleges that BBG's business practice is unfair because it knowingly charges connection fees, minimum minute charges and other ancillary fees without disclosing such charges and fees to its customers. Evans does not allege that the amount of those charges is unreasonable. (¶¶ 13, 14, 17 and 32.) These allegations are distinct from Evans' initial section 201(b) claims.

**2.BBG's Failure to Disclose is Actionable**

BBG contends that because it did not allegedly owe Evans a duty to disclose, his allegation that it failed to disclose its fees and charges to consumers is not actionable under the UCL. Def. Brf. 13:11-14:2. But a plaintiff need only allege that a defendant had a duty to disclose where the plaintiff alleges that a defendant violated the "fraud" prong of the UCL. *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal.App.4th 835, 859 (2007) ("[T]o establish fraud through nondisclosure or concealment of facts, it is necessary to show the defendant 'was under a legal duty to disclose them.' ") (emphasis added); *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336, (1997) *quoting Heliotis v. Schuman*, 181 Cal.App.3d 646, 651 (1986) (stating the four circumstances in which nondisclosure or concealment may constitute *actionable fraud*). In contrast, Evans alleges that BBG violated the "unfair" prong of the UCL. Thus, a determination of BBG's duty to disclose is unnecessary.

Even if Evans were required to allege that BBG had a duty to disclose, it had such a duty because BBG had exclusive knowledge about its charges that were not reasonably known or available to plaintiff. BBG never disclosed its ancillary charges to consumers. Thus, only BBG is aware of this fact. (¶¶ 13-14, 17.) BBG counters this allegation by presenting facts outside of the FAC. It argues that, if consumers want this information all they need to do is ask the operator. Nonetheless, whether or not a consumer should reasonably ask an operator for this information and whether the operator would be able to provide the information is a question of fact not before this court on a motion to dismiss. Thus, Evans has sufficiently alleged that BBG has a duty to disclose to consumers that ancillary charges apply.

Further, BBG's reliance on *Janda v. T-mobile,* 2009 WL 667206 (N.D. Cal. Mar. 13, 2009) (a case designated as not for citation), *Smale v. Cellco Partnership*, 547 F.Supp.2d 1181 (W.D.Wash. 2008), and *Riensche v. Cingular Wireless LLC d.b.a AT&T Wireless*, 2009 U.S. Dist. LEXIS 95802 (W.D.Wash. Oct. 2, 2009) is misplaced. In these three cases, the courts determined that it was sufficient to disclose that the charges would occur without disclosing specific amounts to be charged. *Thomas v. Sprint Solutions, Inc.*, 2010 WL 1263189 at *7 (N.D. Cal. March 30, 2010) ("[t]hus, the Court rejects [the] argument that these cases establish that a wireless carrier is never required to disclose the amount of any fee, regardless of whether it originates with the carrier or is related to taxes or other government-related fees."). Here, Evans does not allege that BBG violated the UCL when they failed to provide the exact amount of the charges, rather, he alleges that BBG violated the UCL when it failed to disclose that the ancillary fees would occur.

Second, BBG again attempts to inject outside facts into this motion to dismiss. It asserts that it did not make partial representations or suppress material facts. BBG ignores the representations made on the payphone sticker by passing blame to a third party. But, as discussed above, Evans alleges that BBG entered into joint venture relationship and/or partnerships with the payphone owners. (¶ 10.) Due to these relationships, BBG is liable for the unlawful acts of the payphone owners, including the misrepresentations made to consumers. *Ohio Cas. Ins. Co v.*

*Harbor Ins. Co.* (1968) 259 Cal.App.2d. 207, 213 - 214 (explaining that joint venturers are jointly and severally liable for adventure activities.)

Further, Evans alleges that BBG is aware that the payphone owners provide partial and inaccurate rate and fee information in order to entice consumers to use the service. (¶ 13.) BBG suppressed facts when they knew the customer was unaware of ancillary charges and failed to disclose this fact.

**3. BBG's Actions are Properly Alleged as Unfair**

The UCL has a broad scope. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) ("[T]he Legislature ... intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.") It permits an individual to challenge wrongful business conduct "in whatever context such activity might occur." *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007).

Following *Cel-Tech*, different definitions of "unfair" conduct have emerged in cases brought by consumers. However, courts, including the Ninth Circuit, continue to apply the test of unfair conduct as "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" in many consumer actions. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (this statute "encompasses practices which offend established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."); *Fimbres v. Chapel Mortgage Corp*. 2009 WL 4163332 (S.D. Cal. Nov. 20, 2009); *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App.4th 700, 718 (2001).

The other test that has emerged requires that the public policy which is a predicate to the unfair competition claim be tethered to a specific constitutional, statutory, or regulatory provision. *Fimbres v. Chapel Mortgage Corp*. 2009 WL 4163332 (S.D. Cal. Nov. 20, 2009). But as the Ninth Circuit Court of Appeals recognized, the second line arose from *Cel-Tech*, a case involving competitors, not consumers. *Cel-Tech Communications, Inc.*, 20 Cal.4th at 187 n. 12. (noting that the holding was limited to cases brough by a competitor and did not address UCL action brought

by consumers); *Lozano*, 504 F.3d at 735. In fact, courts continue to endorse the use of the balancing test post-*Cel-Tech*. *Id*. at 736.

Evans has alleged that BBG's conduct meets this test. Here, the charging of $131.69 for four minutes worth of calls is plainly immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers and Evans has made a *prima facie* showing of harm. While it is unfathomable to think that the utility of BBG's conduct outweighs the substantial harm suffered by Evans and the members of the putative class, the Court is ill-equipped to apply the balancing test at the pleading stage:

> While this process is complicated enough after a hearing in which the defendant has revealed the factors determining the utility of his conduct, it is really quite impossible if only the plaintiff has been heard from, as is the case when it is sought to decide the issue of unfairness on demurrer. Therefore-since the complaint is unlikely to reveal defendant's justification- if that pleading states a prima facie case of harm, having its genesis in an apparently unfair business practice, the defendant should be made to present its side of the story. If, as will often be the case, the utility of the conduct clearly justifies the practice, no more than a simple motion for summary judgment would be called for.

*Motor, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740 (1980).

Importantly, Evans' UCL claim does not rest on the fact that BBG's per minute rates are unreasonable. Rather, as made clear in the FAC, Evans claims that it is BBG's practice of charging undisclosed rates and ancillary fees, such as a minimum number of minutes and connection fee, that is unfair. (¶ 32.) See *Schnall v. Hertz Corp.,* 78 Cal.App.4th 1144, 1163 - 1170 (2000) (holding that while the amount of the charge was not unfair because it was protected by statutory safe harbor, the manner by which defendant induced its customers could form independent basis to establish unfairness prong of UCL claim).

**4. Plaintiff is Not Required to Allege Justifiable Reliance**

BBG argues that Evans's UCL claim must be dismissed because it fails to adequately allege that he relied upon any representation it made. BBG's arguments are misplaced.

As with the "duty to disclose" issue discussed above, reliance is only required under the "fraudulent" prong of the UCL. *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal.App.4th 36, 42-43 (2009). Indeed, the Court in *Tobacco II* limited the reliance requirement to fraud

actions: "We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." *In Re Tobacco II Cases*, 46 Cal.4th 298, 325 n. 17 (2009).

Here, Evans does not allege a cause of action for fraud nor does he allege a claim under the fraudulent prong of the UCL. Rather, Evans alleges that BBG's practices are unfair. As such, Evans is not required to prove justifiable reliance.

Even if Evans was required to plead justifiable reliance, he has sufficiently done so. Evans has alleged that he observed a sticker on each of the payphones stating US/International Calls from $.69 per minute. (¶ 12.) These payphones did not display any other disclosures regarding rates, fees, or charges. Evans further alleged that he relied on this per-minute rate and the fact that no other fees were disclosed on the sticker when deciding to use the payphone's service. (¶ 14.) Evans alleged that BBG entered into joint ventures and partnerships with domestic and international payphone service providers to provide long distance calls for payphone users and as such, is liable for the acts of the payphone providers. Moreover, BBG knew the payphone owners provide partial and inaccurate rate and fee information to entice consumers to use the service. (¶¶ 13-14.) These allegations are sufficient to allege reliance.

## D. EVANS' CLAIM FOR BREACH OF IMPLIED CONTRACT IS SUFFICIENTLY PLED.

BBG asserts that Evans has not plead an implied-in-fact contract as he has allegedly not attempted to provide any information about an alleged contract between him and BBG. (Def. Brf. 21:7-10) This is incorrect.

A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of America, Inc.*, 161 Cal.App.4th 172, 182 (2008); *Gomez v. Lincare, Inc.* 173 Cal.App.4th 508, 525 (2009). "The essential elements of an implied-in-fact contract and an express contract are the same, namely, mutual assent and

consideration. In a case such as the one before us, the assent of the writer is found in his submission of the idea or material to the producer, with the reasonable expectation of payment which can be inferred from the facts and circumstances." *Chandler v. Roach*, 156 Cal.App.2d 435, 440-441 (1958).

Here, Evans alleges that through the parties conduct there was an implied contract. (¶ 16, 36.) Evans' assent is found in his agreement to pay BBG for their payphone services offered at a starting rate of $.69 per minute. (¶ 16.) BBG's assent is found through their conduct of connecting the call. The breach of this implied contract occurred when BBG charged and unjustifiably retained sums of money from Evans through charging him undisclosed fees and charges in connection with this payphone service. (¶ 38.)

BBG next claims that an implied-in-law contract claim fails because 1) their UCL claim fails and 2) they have no plead that BBG accepted an unrequited benefit.

First, as discussed above Evans has sufficiently plead a UCL claim. Second, "[t]he so-called 'contract implied in law' in reality is not a contract. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice. Quasi contractual recovery is based upon benefit accepted or derived for which the law implies an obligation to pay. *Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 (1953); *Davies v. Krasna*, 12 Cal.App.3d 1049, 1054 (1970) (citation and emphasis omitted.) This is an "obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his former position by return of the thing or its equivalent in money." *McBride v. Boughton*, 123 Cal.App.4th 379, 388 n. 6 (2004) citing 1 Witkin, Summary of Cal. Law, Contracts, § 91, p. 122, italics omitted.

Here, Evans has sufficiently pled an implied-in-law contract. While Evans did receive the benefit of a phone call, it was not on the terms he had expected. Rather than solely being charged a per-minute rate, Evans was charged ancillary fees that were never disclosed to him and he never would have agreed to pay.

/ / /

**E. EVANS SUFFICIENTLY ALLEGES A CLAIM FOR CONVERSION AGAINST BBG**

BBG argues that Evans' conversion claim must be dismissed because it cannot be based on an overcharge claim. (Def. Brf. 11:22- 23:26.)

Evans is not complaining that BBG "overcharged" him for the payphone service. Rather, Evans asserts that BBG imposed undisclosed fees and charges in connection with its telephone service. (¶ 12-14, 17.) In this Court's Order ruling on BBG's motion to dismiss Plaintiff's original Complaint, the Court stated that: "Plaintiff contends that his conversion claim does not merely allege an overcharge, but additionally that Defendant imposed undisclosed fees and charges on his card. [Citation] This allegation, however, is not clearly articulated in Plaintiff's cause of action for conversion."

Plaintiff has cured this defect in his FAC. Evans alleges that he was never informed that he would be charged additional fees in connection with the call and that he could not have known that these charges existed. (¶ 17.) Evans further alleges that the payphones did not display any other disclosures regarding rates, fees, or charges and that BBG is aware that consumers are provided with partial and inaccurate rate and fee information to entice consumers to use the service but fails to inform consumers of this. (¶¶ 12-14.)

BBG also asserts that Evans has not alleged a specific, identifiable sum of money. (Def. Brf. 15: 3 - 16:20.) But at the pleadings stage, it is only necessary for a plaintiff to plead an *amount that is capable of later identification*. *Natomas Gardens Inv. Group, LLC v. Sinadinos*, 2010 WL 1659970 at *9 (E.D.Cal., 2010) (emphasis added); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP.*, 150 Cal.App.4th 384, 397 (2007) ("In this case, plaintiffs may have stated a cause of action for conversion by alleging, in effect, an amount of cash 'capable of identification.' ")

Here, Evans alleges that the sum of the undisclosed fees and charges (in the form of ancillary fees, such as a connection charge and a minimum number minutes to be charged) imposed upon his credit card represents the sum converted by Defendants. (¶¶ 16.). Evans alleges that the converted sum is the excess amount of the charge above $.69 per minute because he is

unaware of the exact rate per minute he was charged. This amount is capable of later identification and can only be determined through discovery, where BBG's ancillary fees will ultimately be disclosed.

## IV.

## CONCLUSION

BBG engages in a shocking and unfair practice of charging customers exorbitant undisclosed ancillary fees in connection with their payphone services. Rather than informing the consumers that these ancillary charges exist, BBG blames the customer after-the-fact for not asking if any other charges would be associated with the call.

BBG seeks to eliminate this action at the pleadings stage by asserting that it is not properly before this Court. But it is BBG's business practice of charging undisclosed fees that is a violation of the UCL. These allegations are outside the FCC's purview. Evans has pleaded a *prima facie* case that the undisclosed charges in violation of the UCL. Through this conduct BBG has breach an implied contract and converted monies from the Class.

Plaintiff Brandon Evans on behalf of himself and the putative class respectfully requests that the Court deny BBG's motion to dismiss the Complaint it its entirety.

Dated: August 16, 2010

KRAUSE KALFAYAN BENINK & SLAVENS, LLP

/s/ Mary K. Wyman
Mary K. Wyman
Attorneys for Plaintiff
mwyman@kkbs-law.com