FRED R. PUGLISI, Cal. Bar No. 121822
VALERIE E. ALTER, Cal. Bar No. 239905
ELIZABETH S. BERMAN, Cal. Bar No. 252377
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: 310-228-3700
Facsimile: 310-228-3701
fpuglisi@sheppardmullin.com
valter@sheppardmullin.com
eberman@sheppardmullin.com

Attorneys for Defendant,
BBG Communications, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON EVANS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BBG COMMUNICATIONS, INC., a Delaware CORPORATION, and DOES 1 - 10,<br><br>Defendant. | Case No. 10-CV-0542-H-NLS<br><br>**DEFENDANT BBG COMMUNICATIONS, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: September 3, 2010<br>Time: 11:00 a.m.<br>Courtroom: 13 |

# TABLE OF CONTENTS


Page

I. INTRODUCTION AND PROCEDURAL BACKGROUND ..... 1

II. THE LAW OF THE BAHAMAS GOVERNS EACH OF THE CLAIMS ASSERTED IN PLAINTIFF'S FAC ..... 1

A. There Is A Conflict Between California Law And The Law Of The Bahamas. ..... 2

B. The Bahamas Has A Strong Interest In The Application Of Its Laws, Whereas California Has A Minimal Interest In The Application Of Its Laws, If Any. ..... 3

C. Even If California Had An Interest In Applying Its Laws, The Comparative Impairment Analysis Favors Application Of Bahamian Law. ..... 5

III. PLAINTIFF'S UCL CLAIM IS PREEMPTED ..... 7

A. The Court's June 18, 2010 Order Applies Equally to the FAC. ..... 7

B. Charging a Fair Fee is Not Unfair. ..... 9

IV. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Coufal Abogagdos v. AT&T, Inc.*
223 F.3d 932 (9th Cir. 2000) ........ 5

*Klaxon Co. v. Stentor Electric Mfg. Co.*
313 U.S. 487, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941) ........ 1

*Ting v. AT&T*
319 F.3d 1126 (9th Cir. 2003) ........ 10

State Cases

*Clothesrigger, Inc. v. GTE Corp.*
191 Cal.App.3d 605 (1987) ........ 4

*Diamond Multimedia Systems, Inc. v. Superior Court*
19 Cal.4th 1036 (1999) ........ 4

*Hernandez v. Burger*
102 Cal. App. 3d 795 (1980) ........ 4, 5

*Hurtado v. Superior Court*
11 Cal. 3d 574 (1979) ........ 5

*Kearney v. Barney*
39 Cal.4th 95 (2006) ........ 2, 3

*McCann v. Foster Wheeler, LLC*
48 Cal. 4th 68 (2010) ........ 5, 6

*Offshore Rental Company, Inc. v. Continental Oil Co.*
22 Cal. 3d 157 (1978) ........ 6

*Wong v. Tenneco, Inc.*
39 Cal. 3d 126 (1985) ........ 6

Statutes

47 U.S.C. § 201(b) ........ 8

Other Authorities

Bahamas Telecommunications Act, 2009, § 40(h) .................................................................. 2, 6

*Joint FCC/FTC Policy Statement for the Advertising of Dial-Around and Other Long-Distance Services to Consumers,* 65 Fed. Reg. 44053, 44054 (July 17, 2000) ........................ 8

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

BBG Communications, Inc. ("**BBG Communications**") moved to dismiss Plaintiff Brandon Evans' ("**Plaintiff**") First Amended Complaint ("**FAC**") on the grounds that applying California law to claims based on a phone call by a North Carolina resident from a pay phone in The Bahamas to North Carolina would violate the Due Process clause of the United States Constitution. [Motion at 7-9 (Docket No. 15-1); Reply at 1-3 (Docket No. 19).] BBG Communications also argued, among other things, that Plaintiff's claim for violation of Cal. Bus. & Profs. Code § 17200 ("**UCL**") is barred because (a) Plaintiff did not first seek a determination from the Federal Communications Commission ("**FCC**") as to the reasonableness of BBG Communications' practices; and (b) to the extent Plaintiff persists in alleging that BBG Communications' practices are "unfair" because its charges are "excessive" or "exorbitant," his claim is preempted by the FCA under the implied conflict preemption doctrine. [Motion at 10-13; Reply at 3-4.]

On September 3, 2010, the Court held a telephonic hearing and requested supplemental briefing addressing (1) choice of law for all claims, and (2) federal preemption of the UCL claim, including the role of the FCC in regulating this area of the law. [Order Requesting Additional Briefing at 1-2 (Docket No. 22).] BBG Communications thus submits the following supplemental brief in support of its motion to dismiss.[1]

## II. THE LAW OF THE BAHAMAS GOVERNS EACH OF THE CLAIMS ASSERTED IN PLAINTIFF'S FAC

A federal district court sitting in diversity applies the law of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941).

---

[1] These issues can be decided on the pleadings as a matter of law, and should be decided at this stage in the litigation, as it would be unfair to force BBG Communications to incur the expense of defending a meritless lawsuit. Moreover, the Court can resolve the matter on the pleadings even without deciding whether Bahamian or California law should apply because the result is the same: if Bahamian law applies, then the FAC should be dismissed because Plaintiff has asserted only claims based on California law and cannot state a claim based on Bahamian law; if California law applies, then the FAC should be dismissed because Plaintiff fails to state any of the claims alleged in the FAC for the reasons set forth in the Motion, Reply and in Section III below.

Thus, in this case, the Court should apply California's choice of law rules to determine which substantive law – that of California or The Bahamas – to apply.

California courts apply the governmental interest approach to answer choice of law questions. This approach

> generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies 'the law of the state whose interest would be more impaired if its law were not applied.

*Kearney v. Barney*, 39 Cal.4th 95, 107-208 (2006) (internal citations and quotations omitted). Applying these factors, it is clear that Bahamian law should apply to each of Plaintiff's claims.

**A. <u>There Is A Conflict Between California Law And The Law Of The Bahamas.</u>**

Each of Plaintiff's claims – for violation of the UCL, breach of implied contract, and conversion – is based on BBG Communications' alleged failure to disclose its rates and fees to Plaintiff, a North Carolina resident, when he placed a telephone call from a payphone in The Bahamas to his family in North Carolina.[2]

As admitted by Plaintiff's counsel during oral argument on September 3, 2010, Bahamian law does not require BBG Communications to disclose its alleged rates and fees. [Sept. 3, 2010 Transcript, at 4:8-15 (attached hereto as **Exhibit 1** for the Court's convenience.] Rather, Bahamian law provides that the Bahamian Utilities Regulation & Competition Authority ("**UCRA**") may require telecommunications companies to disclose their rates only where an entity has market power. *See* Bahamas Telecommunications Act, 2009, § 40(h). Bahamian law does not permit the UCRA to require entities that do not have market power to disclose their rates. *Id.*

---

[2] For each of these claims, Plaintiff contends that BBG Communications' disclosure obligation emanates from the UCL. [*See* Plaintiff's Opposition to Motion to Dismiss, 13:13, 13:24-26, 14:5-7, 14:12-17.] Thus, Plaintiff's claims for breach of implied contract and conversion rise and fall with his UCL claim, and the choice of law analysis for these claims is identical to that of his UCL claim.

Plaintiffs have not, and cannot in good faith, allege that BBG Communications has any market power. Thus, Bahamian law does not require disclosure of BBG Communications' alleged fees and rates.[3]

Aware that Bahamian law does not support his claims, Plaintiff turns to a tortured interpretation of the UCL to argue that this general law mandates that BBG Communications disclose its rates and fees for calls placed from The Bahamas, or anywhere else in the world, to any where else in the world, by anybody in the world. To even state this proposition is to demonstrate its lunacy. As argued in BBG Communications' motion to dismiss, BBG Communications does not believe that the UCL requires any such disclosure. [Motion to Dismiss at 13:4-17:9.] In light of this Court's request, however, BBG Communications will assume for purposes of a discussion of choice of law principles that the UCL does require such disclosures, and proceed with the remaining analysis as outlined in *Kearney, supra*.

**B. <u>The Bahamas Has A Strong Interest In The Application Of Its Laws, Whereas California Has A Minimal Interest In The Application Of Its Laws, If Any.</u>**

Again, Plaintiff attempts to use California law to dictate what disclosures must be made to a North Carolina resident making a phone call from a payphone in The Bahamas to his home in North Carolina.

Given the call originated at a payphone in The Bahamas, it is obvious that The Bahamas has a compelling interest in regulating its use. It is The Bahamas' telecommunication industry that is being utilized. The mere fact that the Bahamian government enacted The Bahamas Telecommunications Act, 2009, and expressly dictated what disclosures must be made by telecommunication companies operating in The Bahamas demonstrates that the Bahamian government, a sovereign nation, believes it has an interest in the regulation of telecommunication services provided in its own country. To argue otherwise would defy logic and common sense – would anyone really contend that the FCC has no interest in regulating the telecommunication

---

[3] This should not be surprising as the Federal Communications Commission ("**FCC**") similarly does not require the disclosure of such information for calls originating in the United States. [*See* Section III(A), *infra* (7:17-9:5).]

industry in the United States, and that it has no interest in enforcing its voluminous rules and regulations? Plaintiff should not be allowed to disregard The Bahamas' right and interest to regulate its telecommunication industry any more than someone in The Bahamas could argue that the FCC has no interest in regulating the United States' telecommunications industry.

Conversely, Plaintiff relies on the general provisions of the UCL to argue that California has an interest in governing the disclosures made to payphone customers in The Bahamas because BBG Communications is a California corporation and does business in California. [Oppo. 6:9-10] The mere fact that BBG Communications is a California corporation, however, does not mean that California has any interest in regulating telecommunications in The Bahamas. *See Hernandez v. Burger*, 102 Cal. App. 3d 795, 799 (1980) ("in the case at bench no legitimate interest or policy of the State of California would be served by the application of its unlimited damages rule because the plaintiff is a resident and citizen of Mexico, the accident occurred in Mexico, and the only connection California has with the case is that the defendants happen to be California residents and that California is the forum.").

Plaintiff's allegation that BBG Communications "develops its policies regarding how rates and fees are disclosed to the customer in San Diego" is similarly of limited import. [Oppo. 6:19-20 Even if some decisions regarding BBG Communications' disclosures were made in California, which they were not.[4], the alleged disclosure policies were carried out in The Bahamas and their

---

[4] As BBG Communications noted in its reply brief, Plaintiff has not alleged any facts to support his conclusory allegations that BBG Communications operated telecommunications services in The Bahamas from California. Even the most basic investigation by Plaintiff into this claim prior to filing would have shown that this allegation is false. [*See* Reply 1:17-23.] Based on these faulty factual allegations, Plaintiff cites *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605 (1987), and *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036 (1999), for the proposition that California has an interest applying its laws to regulate conduct occurring within its borders. *Diamond*, however, did not even apply the governmental interest analysis, let alone suggest that The Bahamas would have no interest in regulating its own telecommunications industry. Similarly, in *Clothesrigger*, the "superior court did not determine whether a true conflict existed between California's interests and those of any other state and, if so, which state's law should apply under the 'comparative impairment' approach," and the appellate court remanded so that superior court could undertake that analysis. 191 Cal.App.3d at 615.

effect was felt in The Bahamas, meaning that The Bahamas has a clear interest in regulating them. As the Ninth Circuit explained in a similar context,

> While some decisions may have been made in the United States, they were carried out in Mexico. . . . Although the situs of the injury is no longer the sole consideration in California choice-of-law analysis, California courts have held that, with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest. . . . It is nonsensical to suggest that Mexico has no interest in regulating conduct that affects contracts made in Mexico.

*Coufal Abogagdos v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000) (internal citations omitted).[5] Thus, it is clear that The Bahamas has a substantial interest in this case, while California, by contrast, has a limited interest in this case, if any interest at all.

**C. <u>Even If California Had An Interest In Applying Its Laws, The Comparative Impairment Analysis Favors Application Of Bahamian Law.</u>**

In applying the third prong of the governmental interest analysis, the Court's job is not to decide which is the "better or worthier rule, but rather to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *McCann v. Foster Wheeler, LLC*, 48 Cal. 4th 68, 97 (2010).

California courts "recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders" and "have adopted a restrained view of the scope or reach of California law with regard to the imposition of liability for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other

---

[5] During oral argument, Plaintiff claimed that The Bahamas has no interest in this case, relying on *Hurtado v. Superior Court*, 11 Cal. 3d 574 (1979). *Hurtado* is inapposite. There, the defendant attempted to apply a Mexican law limiting damages in a wrongful death action. The court held that ***Mexico did not have an interest in the case***, and thus that there was a false conflict between Mexican and California law, ***because the case arose "out of an automobile accident occurring in Sacramento County***." *Id.* at 578. Here, by contrast, the phone calls that gave rise to this lawsuit was made from a payphone on Bahamian soil. *See Coufal Abogados*, 223 F.3d at 935 (distinguishing *Hurtado*); *Hernandez*, 102 Cal. App. 3d at 800 ("Distinguishing *Hurtado* as follows: "In the case at bench, by contrast, the accident occurred in Mexico, and California has no legitimate interest in the possible deterrent effect of its unlimited recovery rule on conduct in Mexico.").

jurisdiction." *Id.* at 98-99. *See also Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 134 (1985) ("Under that longstanding principle of the law of nations, the forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there. The philosophy behind the comity doctrine is easily identified: respect for the sovereignty of other states or countries. . . ").

This is especially true with regard to laws regulating competition:

> When a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises, we believe that the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state. A state has a legitimate interest in attracting out-of-state companies to do business within the state, both to obtain tax and other revenue that such businesses may generate for the state, and to advance the opportunity of state residents to obtain employment and the products and services offered by out-of-state companies.

*McCann*, 48 Cal. 4th at 91-92. *See also Offshore Rental Company, Inc. v. Continental Oil Co.*, 22 Cal. 3d 157, 168 (1978) ("The accident in question occurred within Louisiana's borders; although the law of the place of the wrong is not necessarily the applicable law for all tort actions, the situs of the injury remains a relevant consideration. At the heart of Louisiana's denial of liability lies the vital interest in promoting freedom of investment and enterprise within Louisiana's borders, among investors incorporated both in Louisiana and elsewhere. The imposition of liability on defendant, therefore, would strike at the essence of a compelling Louisiana law." (emphasis removed)).

The Bahamas clearly has the predominant interest in the conduct that forms the basis of Plaintiff's claims against BBG Communications because each of Plaintiff's claims is based on a phone call that Plaintiff made from a payphone on Bahamian soil. Furthermore, the conduct upon which Plaintiff bases each of his claims – namely, BBG Communications' alleged nondisclosure of its rates and fees – would not give rise to liability under Bahamian law. *McCann*, 48 Cal. 4th at 98-99. Finally, like a state law limiting liability for commercial activities conducted within its borders, The Bahamas Telecommunications Act, 2009 only permits the UCRA to impose disclosure requirements on entities with market power. Stated differently, The Bahamas has

clearly made a decision to permit entities without market power to compete without having to disclose rates, presumably because so many companies are competing in the space that the free market will set the price for services – the same policy decision made by the FCC here in the United States. Requiring such disclosures contrary to Bahamian law would strike at the heart of The Bahamas' telecommunication policymaking. By contrast, applying Bahamian law would do no injury to California's policies (at least as Plaintiff interprets those policies), as the facts alleged in this case concern only phone calls placed by a North Carolina resident from The Bahamas to his family in North Carolina. Respect for the sovereignty of The Bahamas thus dictates that the Court apply Bahamian law to Plaintiff's claims in this case, and because Plaintiff cannot state a claim for non-disclosure based on Bahamian law, each of the claims alleged in his FAC should be dismissed.

## III. PLAINTIFF'S UCL CLAIM IS PREEMPTED

BBG Communications raises two preemption arguments: Plaintiff's UCL claim is barred because he failed to comply with the pre-suit requirements of the FCA, and Plaintiff's UCL claim is barred by the implied conflict preemption doctrine to the extent that he is challenging the amount BBG Communications charged him.

### A. The Court's June 18, 2010 Order Applies Equally to the FAC.

In ruling on BBG Communications' Motion to Dismiss Plaintiff's original Complaint, this Court previously ruled:

> The Ninth Circuit has concluded that the FCA requires that claims challenging charges as unjust or unreasonable under section 201(b) must be heard by the FCC before proceeding in court. North County, 594 F.3d at 1158-59. The Court therefore concludes that Plaintiff may not circumvent the structure of the FCA by pursuing a claim under the UCL and grants Defendant's motion to dismiss Plaintiff's third cause of action. See Blanks, 171 Cal. App. 4th at 365.

[Order filed June 18, 2010, Docket No. 12 at 4-5.]

Plaintiff attempts to plead around this holding by dropping his FCA claims based on the amount of the charges, and narrowing his UCL claim to challenging only BBG Communications' alleged failure to disclose its charges. [FAC ¶ ¶ 29-34; Oppo. at 8:7-15.]

There is no meaningful distinction, however, between the allegations stated in Plaintiff's original Complaint, which resulted in a dismissal of the UCL claim, and those stated in his FAC. The scope of the FCA is not limited to the regulation of fees – it extends to all telecommunications business practices. *See* 47 U.S.C. § 201(b) ("All . . . ***practices*** . . . for and in connection with such communication service, shall be just and reasonable. . . ." (emphasis added)). The Court need only replace the word "charges" with "practices" in the portion of the Order quoted above.

Plaintiff does not and cannot seriously argue that BBG Communications' disclosures regarding its long-distance services are not a business practice squarely within the purview of Section 201(b) and the FCC. *Id.* ("The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.").

In response to the Court's query of whether the FCC has considered the reasonableness of the practices alleged in the FAC, BBG Communications directs the Court's attention to the detailed guidance the FCC provided to carriers on this issue in *Joint FCC/FTC Policy Statement for the Advertising of Dial-Around and Other Long-Distance Services to Consumers* ("Policy Statement"). 65 Fed. Reg. 44053, 44054 (July 17, 2000) (providing guidance with respect to whether marketing and advertising practices by common carriers are unfair under Section 201(b)).[6] Nowhere in this Policy Statement does the FCC state that a long-distance carrier is (a) responsible for advertisements or statements made by a third party about its services, or (b) required to disclose its fees when the carrier does not mention or highlight any information about its fees in its advertising or disclosures. *Id.* at 44054-55. Instead, the rule is that once the carrier makes a claim in an advertisement that conveys a material representation to reasonable consumers, the carrier is responsible for the truthfulness of the representation and for substantiating the representation, regardless of whether the carrier intended to convey those messages to consumers. *Id.* at 44054. In other words, where the carrier is silent on a topic, it is not responsible for the truthfulness of someone else's representations on that topic. Here, Plaintiff alleges that BBG

---

[6] At the September 3, 2010 hearing, the Court stated "Then the interesting thing to the Court is that it does seem to be one that if the FCC says it's okay then why shouldn't it be okay." [Sept. 3, 2010 Transcript at 10:18-20.] As is clear from the Policy Statement, nothing alleged in the FAC runs afoul of what the FCC has said is "okay."

Communications was silent about its fees. While Plaintiff alleges the presence of a sticker near the payphone, Plaintiff has not, and cannot in good faith, allege that this sticker, which advertised prepaid calling cards, advertised BBG Communications' payphone rates. BBG Communications is not, and cannot be, required to police the truthfulness of representations made by unidentified third parties, and neither the FCC nor Bahamian law requires that it do so.

**B. Charging a Fair Fee is Not Unfair.**

Plaintiff concedes, as he must, that his UCL claim does not challenge the reasonableness of the amount of BBG Communications' alleged fees. [Opposition to Motion to Dismiss ("Oppo.") at 8:12-15.] The concession is an important one because it is an admission that BBG Communications' charges are fair, just and reasonable, and Plaintiff cites to no authority in which a defendant is held liable under the UCL for charging a fair but undisclosed fee.

Plaintiff's argument in his Opposition, however, does not accurately reflect his FAC as pleaded. A fair reading of the FAC is that BBG Communications' alleged practice of charging undisclosed fees is unfair ***because Plaintiff did not subjectively expect that the fees would be so high***. [FAC ¶ 2 ("These unfair business practices result in consumers incurring outrageously high and undisclosed charges for BBG payphone services."); ¶ 17 ("Plaintiff was shocked by these excessive charges. . . .Because the consumer is unaware of both the actual per-minute rate and the fact that they will be subject to other undisclosed ancillary charges, BBG's business practice results in exorbitant and unexpected charges on the consumers' credit or debit cards."); ¶ 32 ("Defendant has engaged in an 'unfair' business practice by charging excessive, undisclosed, and unfair fees in connection with long-distance phone calls…"); ¶ 33 ("…Plaintiff and the Plaintiff Class have suffered injury in fact and have lost money or property through exorbitant and unexpected charges to their credit and debit cards.") (emphasis added).]

If such a claim could be stated, long-distance telecommunication service providers like BBG Communications would have to determine its prices and/or how to disclose those prices based not on objective criteria, but rather on consumers' subjective expectations. The law does not require the impossible: how could a carrier ever know what an individual consumer's subjective expectations are, or more specifically to this case, how could a carrier allegedly operating in

California know what stickers an unidentified third party placed on payphones it services that are physically located on the other side of the world? Moreover, how could a carrier counteract consumers' subjective expectations by disclosing all possible charges in advance without knowing where in the world a particular call will terminate, how long it will last, and what time of day it will be made? There are so many possible permutations of these variables that the disclosures that Plaintiff seeks are impossible. Moreover, such disclosures are unnecessary. Once a caller is connected to an operator, there is nothing stopping the caller from asking the operator – a live person – how much the call will cost before it is placed.

Regardless of the practical limitations of Plaintiff's claims, the UCL does not require BBG Communications to price its products in line with consumers' subjective expectations, nor does it require BBG Communications to disclose all of its rates and fees to dispel consumers' subjective expectations. With regard to the former, any claim that would require BBG Communications to lower its prices to meet a consumer's subjective expectations is preempted under the implied conflict preemption doctrine. More specifically, such a law would artificially interfere with the free market, which was the express means chosen by Congress and the FCC for enforcing Section 201(b), as set forth more fully in the moving papers. [*See* Motion at 11-12 (citing *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003).] This is especially poignant because Plaintiff concedes that BBG Communications prices are a product of free market competition by admitting that they are fair. With regard to the latter option, there is no duty to disclose a fair fee simply because it is higher than a consumer may subjectively expect. There must be one of the four circumstances present to give rise to a duty to disclose. Here, none of those circumstances exist and, accordingly, the law does not require BBG Communications to disclose its fees in advance. [*See* Motion at 13-17; Reply at 5-8.]

## IV. CONCLUSION

For the reasons explained above, as well as in BBG Communications' motion to dismiss, Plaintiff's FAC should be dismissed, in its entirety, with prejudice.

Dated: September 20, 2010

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By s/ Fred R. Puglisi

FRED R. PUGLISI
Attorneys for Defendant,
BBG Communications, Inc.