ORIGINAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANS, Plaintiff, vs. BBG COMMUNICATIONS, INC., et al., Defendants. | Case No. 10CV0542-H(NLS) San Diego, California Friday, September 3, 2010 11:00 a.m. |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | ERIC BENINK, ESQ.<br>Krause, Kalfayan, Benink & Slavens, LLP<br>625 Broadway, Suite 635<br>San Diego, California 92101<br>(619) 232-03331 |
| For the Defendant: | FRED PUGLISI, ESQ.<br>ELIZABETH BERMAN, ESQ.<br>VALERIE ALTER, ESQ.<br>Sheppard, Mullin, Hampton & Richter, LLP<br>1901 Avenue of the Stars<br>Suite 1600<br>Los Angeles, California 90067<br>(310) 228-2283 |
| Transcript Ordered by: | FRED PUGLISI, ESQ. |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Court Recorder: Lynnette Lawrence
United States District Court
880 Front Street
San Diego, California 92101

Transcriber: L. L. Francisco
Echo Reporting, Inc.
6336 Greenwich Drive, Suite B
San Diego, California 92122
(858) 453-7590

SAN DIEGO, CALIFORNIA FRIDAY, SEPTEMBER 3 2010 11:00 AM

--oOo--

(Call to order of the Court.)

THE COURT: Good morning. Would you state your appearances for the record. First for the Plaintiff.

MR. BENINK: Yes, this is Eric Benink for the Plaintiff.

THE COURT: And for the Defense.

MR. PUGLISI: Good morning. This is Fred Puglisi, Elizabeth Berman and Valerie Alter, Sheppard, Mullin, Richter and Hampton on behalf of the Defendant.

THE COURT: Thank you. I wanted to have an argument on the motion to dismiss. And I gave you a heads up that I wanted the parties to address the choice of law.

When I was taking a look at this it just kind of struck me, why would we assume that somebody who's calling in the Bahamas, and he's calling to North Carolina, and he doesn't have any connection to California, why would we just assume that we would apply California law. That one didn't make a lot of sense to me. You may proceed. And the Defendants can proceed first because it's your motion to dismiss. But, then the flip side is, if we don't use California law, what law do we use and what would be the distinction, or would there be any other result?

MR. PUGLISI: Your Honor, quickly I think what you

would use -- this is Fred Puglisi. We have to say that for the record I know -- for the Defendant. I think you've raised a good point. Normally what you would do is apply the Government Interest Analysis to determine whose law would apply here with respect to whether there's a disclosure obligation. And applying that three-part test would in fact lead to application of the Bahamian law, law of the Bahamas, not California law, in this particular instance.

THE COURT: It's too bad that we don't -- so is there a reason why the parties have elected not to go and exhaust because partly it makes more sense to me that you would have this FCC analysis as to whether this is fair, or whether this is excessive or not excessive.

MR. PUGLISI: That was obviously part of our first motion to dismiss. And instead of exhausting I believe the Plaintiff has decided that they would just concede, okay, the rates are reasonable. We're not challenging the rates. What we're challenging now is the disclosures. We don't think that still gets them out of the need to exhaust, because the FCC does regulate such things as well. Just as here in the Bahamas, they also have regulations as to who's required to make disclosures and what disclosures. And that hasn't been exhausted here in the states with respect to this argument. But, certainly as you pointed out in your

earlier order, there is an issue as to whose law would apply to this type situation. If you have a North Carolina resident calling North Carolina from the Bahamas, you really have no connection to California whatsoever other than the fact that BBG Communications is located in California. I mean, we are a California corporation. And under a choice of law analysis though if you apply the three-part test, really from the standpoint of the test there's no doubt you would apply Bahamian law to this situation because there is no real connection between the conduct, the action and the parties in California.

THE COURT: Let me hear from the Plaintiff.

MR. BENINK: Eric Benink.

First, I think we need to recognize that a Federal Court sitting in diversity can apply the choice of law the forum state. And this is a case based on CAFA, Class Action Fairness Act, which is part of the diversity statute. So the Court can, kind of an initial matter, apply California law.

Now the question is, is there another law that can be applied as well and when a party is asserting that California law should not apply, that other party has the burden of proof to show that another law should apply.

So, I think we need to understand and recognize that it's actually BBG's burden of proof here to show that

this Governmental Interest Test, which I'll touch upon in a moment, that Mr. Puglisi just spoke of, actually favors the application of Bahamian law. I've taken a very careful look at this after receiving your order and I'm convinced that the Governmental Interest Test demonstrates that California law is the law to apply here. And I base it on this, first, the forum of our proponent must identify how the two laws differ. And I think at least that threshold showing has been made here by BBG. They're saying that under Bahama law a telecommunications company is not required to make these disclosures unless it exerts certain market power. So there's at least kind of as an initial matter a difference in those two different laws. And under California law 7200 we would say that these disclosures need to be made regardless.

The second step is to determine whether there is an actual conflict. Is this a true conflict or a false conflict. And there are a lot of cases that talk about false conflicts. And that's where I'd really like the Court to focus its attention in reviewing this.

A false conflict exists when despite the fact there are differences in the laws, the other foreign law -- or jurisdiction, actually doesn't have any interest in applying that law. And that's the case here. Just to illustrate, there's a case out of California called Hertado

(phonetic) that is 11 Cal3rd 574, it's a 1974 California Supreme Court case, that discussed what a false conflict is. And in that case there was a Mexican national traveled to California got into an accident with a California Defendant. The California Defendant tried to apply Mexican law, which limited the amount of damages that could be recovered in the injury. The Court said, despite the fact there are differences between Mexican and California law on the damages, Mexico actually doesn't have any interest whatsoever in applying that law because that law is designed to protect a Defendant residing or living in Mexico, which was not the case here. I think that's precisely what's going on here. We have a Bahamian law that's intended to protect a Bahamian corporation. In BBG's reply brief they actually discuss the fact that this law only applies to Bahamian corporations incorporated there with business premised in the Bahamas.

So this is really a true absolute true conflict. There's no reason that the Bahamas have an interest in applying its law here. There are plenty of cases out there that say California has an interest in regulating business that occurs inside of California. I'd refer you to Clothes Rigger, Inc. versus GTE CORP. 191CAL AP 3rd 605. There's another case, California Supreme Court case, Diamond Multi Media, this is 1036. There's a quote in there that says,

"California has a legitimate and compelling interest in preserving a business climate free of fraud and disceptive practices."

So we are saying that all of this bad activity emanates from California. The injury potentially happens outside of California. But many many years ago in Wright versus Percell (phonetic), which is another California Supreme Court case, the Court rejected the idea that the law, the place of the wrong, is the applicable law.

So we'd ask the Court to really take a look at this false conflict concept. And I think if you do, you'll determine that 7200 and the other claims under California can be properly applied here.

THE COURT: Is there another way that the Court can say on the issue of what law applies it hasn't really been settled yet so that it's possible that there is no claim but it's possible that there is a claim and we just let it proceed and then have further -- at a later time decide whether or not under the Governmental Interest Analysis what law applies?

MR. BENINK: That's right, your Honor.

THE COURT: It's a little odd because without -- when we had the FCC claim, it's the same analysis whether it's the UCL claim or conversion because the sticking part for me is here's some California resident in the Bahamas

calling North Carolina. Why do we just assume California is involved other than there's a California company. So is the focus on the Defendant, the company, or is the focus on the action. And we didn't have additional briefing. So either I'm going to give you some opportunity for additional briefing, or the Court may let it go subject to perhaps motion for summary judgment down the road.

MR. BENINK: Your Honor, this is Eric Benink. This issue often arises at the summary judgment level, or even during class certification. At this juncture the Defendant has the burden to show that the other law should apply. At later proceedings, especially a class certification, it would be our burden to show that the case is manageable, which includes some uniformity in an application of a certain law. So I would think this is something that we don't need to decide at this juncture. I'd be happy to brief it if the Court so wishes. But, like I said, I think this is a burden that Defendant had from the get go and that burden has not been met yet.

MR. PUGLISI: Your Honor, this is Fred Puglisi again if I may speak. I believe we have reached and met that burden. If the Court wants further briefing I'm more than willing to do that and I invite that. The defense shouldn't be put through the expense of being -- this is alleged as a national class action. We shouldn't be put

through the defense of doing what would be required in this matter if in fact the law of California doesn't even apply. And counsel stated that the Bahama law really has no interest here in this situation and therefore there's not a true conflict.

Put yourself in a situation -- we and the FCC -- do you really think that the FCC would say, hey, look, we have really have no interest in protecting our own consumers and the people in our country with respect to the disclosures or the use of our telecommunication services. Of course the Bahamas has an interest in protecting not just its own citizens but anybody I guess who's using their telecommunication services in that country.

Plaintiff concedes there is a conflict. He's saying as they interpret California law, and based on the Bahamian law, there is a conflict. The disclosures they're requiring, or asking for, are not required under Bahamian law. Now the question becomes is it a true conflict. Does the Bahamian Government have an interest in protecting in looking over the people using its telecommunication services to make sure they're not deceived. Of course they have an interest. To say that there's not a true conflict because they have no interest, why would they pass legislation dealing with the very subject if they didn't have an interest.

Then the third part is, okay, now once you know there's a true conflict, let's really look at where it occurred, how it occurred and determine who has the contact here that should govern this situation. And under that third test, literally, when you have the phone's located in the Bahamas, the calls are originating in the Bahamas, you have a North Carolina resident calling North Carolina, it is clear you would apply the Bahamian law under that set of facts.

Now the other thing counsel said is that you know statutes that show that this particular provision about disclosures only apply to telecommunication companies licensed in the Bahamas. Well, our point there was to point out you can't engage in telecommunication services unless you are licensed in the Bahamas. There's no difference here. That's the law in the Bahamas. You have to be licensed. Therefore their claim, their conclusory allegation that all of this happened in San Diego is clearly wrong. We couldn't possibly be doing all of this in San Diego because you have to be licensed in the Bahamas to do all of this.

And, by the way, while we can't raise it on a motion to dismiss we have told counsel twice in the past they've got the wrong entity. We do not do business in the Bahamas. We've given the name of the entity that actually

does business in the Bahamas, but they've decided not to pursue that.

But my point is, before we should be forced to defend a national class action -- I mean, the Court has raised a good point. If you want further briefing I'm more than glad to brief it. But under the Government Interest Analysis I think it is very clear the Bahama law would control and they themselves have admitted, there is a conflict. And under the Bahama law the disclosures that they're talking about are not required.

THE COURT: All right. Well thank you very much. The Court will give the matter some consideration.

I think on the Plaintiff's side if you put yourself in the situation of the Plaintiff, you're making some phone call, he alleges that it's from sixty-nine cents and then you get on your visa these charges and you say, wait a minute. This is a whole lot more than from sixty-nine cents. Then the interesting thing to the Court is that it does seem to be one that if the FCC says it's okay then why shouldn't it be okay. And then I did think just initially in reading it, the big picture for me was why would they assume California law applies. But it is a California company. So I will give this some consideration and then let you know if I am prepared to issue my decision or request further briefing. Thank you very much.

MR. PUGLISI: Thank you very much, your Honor.

MR. BENINK: Thank you very much, your Honor.

(Proceedings concluded.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

[signature] 9-13-10

Transcriber Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

[signature]

L. L. Francisco, President
Echo Reporting, Inc.