FRED R. PUGLISI, Cal. Bar No. 121822
VALERIE E. ALTER, Cal. Bar No. 239905
ELIZABETH S. BERMAN, Cal. Bar No. 252377
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: 310-228-3700
Facsimile: 310-228-3701
fpuglisi@sheppardmullin.com
valter@sheppardmullin.com
eberman@sheppardmullin.com

Attorneys for Defendant,
BBG Communications, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BRANDON EVANS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

BBG COMMUNICATIONS, INC., a Delaware CORPORATION, and DOES 1 - 10,

Defendant.

Case No. 10-CV-0542-H-NLS

**DEFENDANT BBG COMMUNICATIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Hearing Date: February 28, 2011
Time: 10:30 a.m.
Courtroom: 13

[*Notice of Motion and Motion For Summary Judgment, Separate Statement of Undisputed Material Facts In Support of Summary Judgment and Declarations of Susan Freeman, Jorge Macari and Rafael Galicot in Support of Summary Judgment, filed concurrently herewith.*]

Complaint filed: March 12, 2010
Trial Date: None Set

# TABLE OF CONTENTS

Page


I. INTRODUCTIONS ..... 1

II. STATEMENT OF MATERIAL FACTS & PROCEDURAL HISTORY ..... 2

A. Plaintiff's Allegations In The FAC ..... 2

B. BBG Communications' Motion To Dismiss The FAC ..... 3

C. BBG Communications Did Not Engage In Any Of The Conduct Alleged In The FAC ..... 5

III. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT ..... 8

IV. BBG COMMUNICATIONS IS ENTITLED TO SUMMARY JUDGMENT ..... 9

A. Plaintiff Sued The Wrong Defendant. ..... 9

1. BBG Communications Did Not Engage In An Unfair Business Practice. ..... 10

2. BBG Communications Did Not Enter Into Nor Breach A Quasi-Contract With Plaintiff. ..... 11

3. BBG Communications Did Not Convert Plaintiff's Money. ..... 11

B. California Law Does Not Apply To The Disclosures Made To Plaintiff In The Bahamas. ..... 12

1. There Is A Material Difference Between Bahamian And California Law. ..... 13

2. The Bahamas Has A Valid Interest In Applying Its Laws. ..... 14

3. The Bahamas Has The Predominant Interest In Applying Its Laws. ..... 15

C. California Law Does Not Apply To The Business Practices Of Foreign Entities. ..... 16

D. Even If California Law Applied, Plaintiff's Claims Are Not Actionable. ..... 17

V. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*America West Airlines, Inc. v. GPA Group, Ltd.*
877 F.2d 792 (9th Cir. 1989) ... 9

*Anderson v. Liberty Lobby Inc.*
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ... 8

*Baker v. Aegis Wholesale Corp.*
No. C-09-5280, 2010 WL 2853915 (N.D. Cal. July 21, 2010) ... 18

*Boyd v. Wood*
52 F.3d 820 (9th Cir. 1995) ... 9

*Celotex Corp. v. Catrett*
477 U.S. 317, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986) ... 8

*Doe v. Wal-Mart Stores, Inc.*
No. 05-7307, 2007 WL 5975664 (March 30, 2007) ... 17

*Fisher v. Tarinor*
242 F.3d 24 (1st Cir. 2001) ... 12

*Hauk v. JP Morgan Chase Bank*
552 F.3d 1114 (9th Cir. 2009) ... 18

*Hilton v. Guyot*
159 U.S. 113 (1895) ... 16

*Janda v. T-Mobile*
No. C 05-03729, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009) ... 13

*Johnson v. Mammoth Recreations, Inc.*
975 F.2d 604 (9th Cir. 1992) ... 9

*McAnaney v. Astoria Financial Corp.*
2009 WL 3150430 (E.D.N.Y. Sept. 29, 2009) ... 12

*McKenzie v. BellSouth Telecommunications, Inc.*
219 F.3d 508 (6th Cir. 2000) ... 12

*Morgan v. Harmonix Music Sys. Inc.*
No. 08-5211, 2009 WL 2031765 (N.D. Cal. July 7, 2009) ... 16

*Oghogho v. Operating Engineers Local 3 District 80*
No. 07-1570, 2009 U.S. Dist. LEXIS 9860 (E.D. Cal. Jan. 28, 2009) .......................... 9

*Priyanto v. MS/Amsterdam*
No. 07-3811, 2009 WL 15739 (C.D. Cal. Jan. 23, 2009) ........................................... 17

*Riensche v. Cingular Wireless LLC d.b.a. AT&T Wireless*
2009 U.S. Dist. LEXIS 95802 (W.D. Wash. Oct. 2, 2009) ......................................... 13

*Rubio v. Capital One Bank*
572 F.Supp.2d 1157 (C.D. Cal. 2008) ......................................................................... 18

*Smale v. Cellco Partnership d.b.a. Verizon Wireless*
547 F. Supp. 2d 1181 (W.D. Wash. 2008)..................................................................... 13

*Tidenburg v. Bidz.com*
No. 08-5553, 2009 WL 605249 (C.D. Cal. March 4, 2009)......................................... 16

*Toy v. Triwire Engineering Solutions, Inc.*
2010 WL 3448535 (N.D. Cal. Sept. 1, 2010) .............................................................. 12

*Von Koenig v. Snapple Bevg. Corp.*
713 F.Supp.2d 1066 (E.D. Cal. 2010)........................................................................... 18

State Cases

*Berryman v. Marit Prop. Mgmt., Inc.*
152 Cal. App. 4th 1544 (2007) .................................................................................... 13

*Cel-Tech Com. Inc. v. Los Angeles Cellular Tel. Co.*
20 Cal. 4th 163 (1999) ........................................................................................... 17, 18

*Greka Integrated, Inc. v. Lowrey*
133 Cal. App. 4th 1572 (2005)....................................................................................... 12

*McBride v. Boughton*
123 Cal. App. 4th 379 (2004)......................................................................................... 11

*McCann v. Foster Wheeler, LLC*
48 Cal. 4th 68 (2010) ..................................................................................................... 14

*Norwest Mortgage, Inv. v. Superior Court*
72 Cal. App. 4th 214 (1999)...................................................................................... 16, 17

*People v. Duz-Mor Diagnostic Lab.*
68 Cal.App.4th 654 (1998)......................................................................................... 18, 19

*South Bay Chevrolet v. General Motors Acceptance Corp.*
72 Cal. App. 4th 861 (1999) ... 10

*Warner Const. Corp. v. City of Los Angeles*
2 Cal.3d 285 (1970) ... 13

*Washington Mutual Bank, FA v. Superior Court*
24 Cal. 4th 906 (2001) ... 13, 14

*Weitzenkorn v. Lesser*
40 Cal. 2d 778 (1953) ... 11

*Wong v. Tenneco, Inc.*
39 Cal. 3d 126 (1985) ... 16

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Fed. R. Civ. P. § 56(c) ... 8

FED. R. CIV. P. § 56(e) ... 8

State: Statutes, Rules, Regulations, Constitutional Provisions

Cal. Bus. & Prof. Code § 17200 ... 1, 17

## MEMORANDUM OF POINTS & AUTHORITIES

## I.

## INTRODUCTIONs

Plaintiff Brandon Evans ("**Plaintiff**") is seeking to apply the wrong law to the wrong defendant.

Plaintiff alleges that a sticker on a payphone he used in The Bahamas stating a "beginning" rate of $0.69 per minute was misleading, and seeks the return of the money he was charged in excess of $0.69 per minute for three long-distance calls he made from Nassau to North Carolina. Despite the fact that the three calls he made originated in The Bahamas, a sovereign nation, and terminated in North Carolina, a sovereign state, Plaintiff's *First Amended Class Action Complaint for Damages and Injunctive Relief* ("**FAC**") states three California state law claims for relief: violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("**UCL**"), breach of implied contract, and conversion.

The critical allegation in the FAC that allowed Plaintiff to proceed beyond the pleading stage is that Defendant BBG Communications, Inc. ("**BBG Communications**") provided all of the services to Plaintiff in connection with the three calls he made, including services related to the fee disclosures and operator assistance services, from its principal place of business in San Diego, California. This is not true. As Plaintiff has been repeatedly informed since the day BBG Communications had notice of this action, ***BBG Communications had nothing to do with the calls Plaintiff made in The Bahamas, or with the alleged disclosures made to him.***[1]

Rather, BBG Global, A.G. (a Swiss company), Network Operator Services, Inc. (a Texas company), Bahamas Communications Services, Ltd. (a Bahamian company), and

[1] *See* Memorandum of Points & Authorities in support of Motion to Dismiss Complaint at 1 (Docket No. 5-1 at 8); Reply in support of Motion to Dismiss Complaint at 6 (Docket No. 10 at 11); Memorandum of Points & Authorities in support of Motion to Dismiss FAC at 1 (Docket No. 15-1 at 7); Reply in support of Motion to Dismiss FAC at ¶ ¶ 20, 25, 44 *et seq.* (Docket No. 19 at 6); Answer to FAC at ¶ ¶ 20, 25, 44 *et seq.* (Docket No. 28).

the Nassau Port Department (a Bahamian governmental agency), processed the calls, made all of the disclosures related to long-distance operator assisted calling services, provided operator assistance services, and charged Plaintiff for the calls he made. None of these entities operate in California.

Accordingly, BBG Communications seeks an order granting summary judgment in its favor because (1) BBG Communications did not engage in any of the allegedly wrongful conduct that forms the basis of Plaintiff's claims, (2) The Bahamas, not California, has the predominate interest in the application of its laws in this case, (3) California law does not apply to the conduct alleged here because it occurred exclusively outside of California, and (4) even if California law did apply, the alleged conduct that forms the basis of Plaintiff's claims is not wrongful.

## II.

## STATEMENT OF MATERIAL FACTS & PROCEDURAL HISTORY

The allegations stated in the FAC that provided the grounds upon which Plaintiff's action was allowed to proceed beyond the pleading stage are not true. Without a foundation on which to stand, this entire action against BBG Communications collapses and judgment should accordingly be entered in its favor.

### A. Plaintiff's Allegations In The FAC

Plaintiff, a North Carolina resident, alleges that he took a cruise to The Bahamas in November 2009. [FAC ¶ 12.] During an excursion to Nassau in The Bahamas, Plaintiff decided to call his home in Shallotte, North Carolina from a payphone allegedly serviced by BBG Communications. [*Id.* ¶¶ 6, 12.] There was allegedly a sticker on the payphone from which Plaintiff made the phone call stating "US/International Calls ***from*** $.69 per minute." [*Id.* ¶ 12 (emphasis added).][2]

[2] Plaintiff has never disputed the fact that this sticker, which did not belong to BBG Communications, was advertising prepaid calling cards, not the operator assisted payphone services being utilized by Plaintiff.

Plaintiff, in alleged reliance on the sticker placed on the payphone by some unidentified third party, placed three calls to his family in the United States. [*Id.* ¶¶ 14-15.] The first two calls lasted approximately one minute and the third lasted approximately two minutes. [*Id.* ¶ 15.] Plaintiff claims that BBG Communications charged his debit card in the amounts of $1.95 and $41.89 for the first call, $1.95 and $41.91 for the second call, and $1.95 and $41.94 for the third call. [*Id.* ¶ 16.] Plaintiff claims that he was never "informed of the actual per-minute rates" or "informed that he would be charged additional fees in connection with the call." [*Id.* ¶ 17.] Notably, however, ***Plaintiff does not allege that he ever asked the operator assisting him with his calls to provide this information at any point***. [*See id.* ¶ 14.]

Plaintiff alleges that BBG Communications is a Delaware Corporation with its principal place of business in San Diego, California. [FAC ¶ 7.] Plaintiff further alleges that BBG Communications "offers payphone services typically found in airports, cruise terminals, and hotels and provides operator-assisted calls service" . . . and "contracts with airports, hotels, and other payphone service providers to provide long distance collect and credit card calls to customers using payphones that do not otherwise provide long-distance service." [*Id.* ¶ 9.] Plaintiff further alleges that these contracts are drafted and executed in California by BBG Communications, that BBG Communications operates its services from its offices in San Diego, and that BBG's officers in San Diego determine the "policies regarding how rates and fees are disclosed to customers . . . in San Diego, California." [*Id.* ¶ ¶ 10 - 11.]

As set forth below, ***none of this is true*** with respect to calls that originate in The Bahamas. Nevertheless, BBG Communications accepted, as it was required to do, the facts pleaded as true and moved to dismiss the FAC.

**B. <u>BBG Communications' Motion To Dismiss The FAC</u>**

BBG Communications moved to dismiss the FAC on several grounds. First, BBG Communications argued that each of Plaintiff's state law claims failed because applying

California law to a phone call and disclosures made in The Bahamas would violate the Due Process Clause of The United States Constitution. [Memorandum in support of Motion to Dismiss FAC at 7-9 (Docket No. 15-1); Reply in support of Motion to Dismiss FAC at 1-3 (Docket No. 19).] Second, BBG Communications argued that, as a matter of law, the allegations in the FAC were insufficient to state claims for violation of the UCL, breach of implied contract, and conversion. [Motion to Dismiss FAC at 9-23; Reply in support of Motion to Dismiss FAC at 3-10.] The Court requested supplemental briefing primarily on the first of BBG Communications' arguments. [Order Requesting Additional Briefing at 1-2 (Docket No. 22).]

On November 17, 2010, the Court issued its order on BBG Communications' Motion to Dismiss. [Order Denying Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("November 17, 2010 Order") (Docket No. 27).] In relevant part, the Court held as follows.

*First*, the Court held that the FAC was sufficient with respect to each of the state law claims Plaintiff asserted. Specifically, the Court held:

- "Plaintiff has plausibly alleged that the utility of **Defendant's practice of failing to disclose fees and charges** is outweighed by the harm he has suffered. . . .the Court concludes that Plaintiff has adequately alleged a cause of action under the UCL." [*Id.* at 6:24 – 7:1 (emphasis added).]

- "Plaintiff has adequately alleged the existence of a contract implied in law" and the claim stands together with Plaintiff's UCL claim. [*Id.* at 7:16 – 8:4.]

- "Plaintiff has adequately pleaded a cause of action for conversion of a specific, identifiable sum **through the imposition of undisclosed fees and charges**." [*Id.* at 8:18 – 8:21 (emphasis added).]

As explained immediately below in Section II(C), however, BBG Communications was not the entity that failed to disclose fees and charges to Plaintiff, nor was it the entity that entered into an implied contract with Plaintiff, nor did it impose any fees or charges on Plaintiff.

*Second*, in applying the three-prong governmental interest test to determine whether Californian or Bahamian law should apply here, the Court held that BBG Communications met its burden with respect to the first two prongs (*i.e.*, material difference in the laws and Bahamas' interest in applying its laws), but ultimately concluded that "Defendant has not shown that the Bahamas' interest in applying its laws is more impaired than California's interest if its laws were not applied" and declined to apply Bahamian law. [*Id.* at 4-5.] The Court expressly relied on the following allegations in reaching this conclusion:

- The allegedly wrongful conduct arises out of "Defendant's billing practices and the conduct of its operators. (See FAC.)" [*Id.* at 4:23 - 4:24.]
- "Plaintiff's FAC alleges that Defendant operates its billing, operator, and telecommunications services from its business offices in San Diego, California. (Id. ¶ 11.)" [*Id.* at 4:24 – 4:26.]
- "BBG's principal place of business is in California." [*Id.* at 4:26.]

Again, the first two of these premises are actually not true and, accordingly, BBG Communications' connection to California is irrelevant. The application of the governmental interest test to the true facts, as set forth below in Section IV(B), leads to the conclusion that Bahamian, not California, law should apply here.

## C. BBG Communications Did Not Engage In Any Of The Conduct Alleged In The FAC

Plaintiff alleges that he stepped off a cruise ship and used a payphone at the cruise ship terminal (*i.e.* port) in Nassau. [FAC ¶ 12.] The Nassau port is owned, operated and controlled by the Nassau Port Department, a Bahamian governmental agency. [Declaration of Jorge Macari ("**BCS Decl**."), ¶ iv, Exhibit 1 (Recital B); ¶ v, Exhibit 2.]

The Nassau Port Department contracted with Bahamas Communications Services, Ltd. ("**BCS**"), a Bahamian company, to provide operator assisted call services to the payphones located in the Nassau port. [BCS Decl. ¶ ¶ iii-vi, Exhibit 1 (Recitals, § § 2.1, 2.2).] Their agreement was executed in The Bahamas (BCS Decl. ¶ iv), and expressly

provides that the laws of the Commonwealth of The Bahamas "shall govern the rights and duties of the Parties and the validity, construction, enforcement, and interpretation of this Agreement." [BCS Decl. ¶ iv, Exhibit 1 § 6.4.]

BCS contracted with BBG Global, A.G. ("**BBG Global**"), for BBG Global to "provide in The Bahamas the specialized international long distance telecommunications services." [BCS Decl. ¶¶ x-xi, Exhibit 3 (Recital D).] BBG Global is a Swiss company. [BCS Decl., Exhibit 3.] BBG Global and BCS together develop and determine sales and marketing strategies, as well as the pricing terms and conditions, for the long distance calling services BBG Global provides in The Bahamas. [BCS Decl. ¶¶ xii-xiii, Exhibit 3 (§§ 1.2.1, 1.3).] Their contract requires BBG Global to arrange for and provide an "operator call center and the necessary infrastructure to: provide operator assisted international long distance calling services to end users making calls from customer locations, terminate calls at their destinations; bill and collect for such calls; provide customer service to end users of the services; and pay commissions…" [*Id.* (§ 2.1(a)(a)).] The contract further provides BBG Global with the "sole and absolute discretion" to determine the "routing and transport of all calls originating from customer locations [*i.e.*, The Bahamas], the modes of payment to be accepted," and "**the rates to be charged**" to provide long distance calling services. [*Id.* (emphasis added).] BCS is also responsible under the agreement for providing "advertising materials required to provide or promote" the long distance calling services. [*Id.* (§ 2.1(d)).] Finally, both BCS and BBG Global agreed that the laws of the Commonwealth of The Bahamas "shall govern the rights and duties of the Parties and the validity, construction, enforcement, and interpretation of this Agreement." [*Id.* (§ 5.4).]

BBG Global in turn has an agreement with Network Operator Services, Inc., dba Centris Information Services ("**NOS**"), a Texas corporation located in Longview, Texas. [Declaration of Susan Freeman ("**NOS Decl.**") ¶¶ 3-6, Exhibit 4.] NOS provides automated and live operator call services to companies like BBG Global. [NOS Decl. ¶ 6.] BBG Global-serviced payphone calls are routed to NOS' platform and processed by NOS

pursuant to the Operator Services Agreement on behalf of BBG Global. More specifically, upon arriving at NOS' switch, NOS' computerized systems automatically identify the originating phone by its number (the "**ANI**"). [NOS Decl. ¶ 7.] Based on this ANI, NOS' systems identify its customer (*i.e.*, in this case, BBG Global), the proper language for prompting the caller (*i.e.*, in this case English), the proper rate plan (as provided to NOS by BBG Global and as determined by BBG Global and BCS), and proper prompts for the call. [*Id.*] The caller is then prompted via NOS' automated system to enter certain information, such as the destination phone number and certain billing and identity verification information. [*Id.*] During this process, the caller is also given the option to speak with a live operator. [*Id.*] Rate information can be obtained by request from the operator before the call is connected and before any charge is incurred by the caller. [*Id.*] The operator provides a rate quote to the caller based on the rate information provided by BBG Global and programmed into NOS' systems. [*Id.*] All of these services are performed in either Longview, Texas or Monterrey, Mexico. [NOS Decl. ¶ 6.] NOS then invoices BBG Global for these services. [NOS Decl. ¶ 10.]

Based on NOS's records, Plaintiff's first call was processed by a NOS live operator in Mexico. [NOS Decl. ¶¶ 8-9.] His second and third calls were processed by NOS's automated system in Texas. [*Id.*] All three of Mr. Evans' calls were connected and BBG Global charged him for these services. [BCS Decl. ¶ 14, Exhibit 3 (§ 2.1(e) (BBG Global "shall be entitled to retain all revenues from calls processed through its call centers.")).]

In sum, all of the services for the three calls that Plaintiff made from The Bahamas to North Carolina, **including all services involving the disclosures of the fees and assessment of charges for those calls**, were provided to Plaintiff by the Nassau Port Authority, BCS, BBG Global, and NOS from The Bahamas, Switzerland, Mexico and Texas. [*See* BCS Decl. ¶ xv; NOS Decl. ¶ 9.] BBG Communications, which does not provide calling services for calls that originate in The Bahamas, did not provide Plaintiff with any telecommunications services from California, does not operate in The Bahamas, and had nothing to do with processing the calls Plaintiff made or the disclosures made to

him regarding the fees and charges for those calls. [Declaration of Rafael Galicot ("Galicot Decl.") ¶ ¶ 4-7.][3]

## III.

## LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

A party is entitled to summary judgment if it can establish that there is "no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." FED. R. CIV. P. § 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once a summary judgment motion is made and properly supported, the nonmoving party may not rest on the mere allegations of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 325. However, "the mere existence of ***some*** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original).

---

[3] It also must be kept in mind that Plaintiff seeks to represent a class of any United States citizen who made a call from anywhere in the world to anywhere in the United States. [FAC ¶ 22.] As is clear from the series of contracts among the multiple parties that are required to provide this type of calling service in any given country, common questions of fact will not predominate this case. Neither will common questions of law predominate, because the three-part governmental interest choice of law analysis will need to be conducted for each country in which a putative class member's call originated. Accordingly, on its best day, Plaintiff's case is worth just over $100.

**IV.**

**BBG COMMUNICATIONS IS ENTITLED TO SUMMARY JUDGMENT**

BBG Communications is entitled to summary judgment and dismissal of this action for four reasons. *First*, Plaintiff named the wrong party. BBG Communications did not engage in any of the allegedly wrongful conduct that gives rise to Plaintiff's three claims. *Second*, Bahamian, not Californian, law should apply because The Bahamas has the predominant interest in regulating fee and rate disclosures associated with the long-distance calling services it arranged to provide for the convenience of the citizens and guests of its country. *Third*, Plaintiff has stated three state law claims, but none of the allegedly wrongful conduct occurred within California. Thus, California law cannot apply to this case. *Fourth*, even if California law could apply to this case, none of the conduct alleged in the Complaint is actionable under the UCL's safe harbor doctrine.

**A. Plaintiff Sued The Wrong Defendant.**

Where the undisputed facts show that the plaintiff has named the wrong party as a defendant, the defendant is entitled to summary judgment. *Johnson v. Mammoth Recreations, Inc.* (9th Cir. 1992) 975 F.2d 604, 610 (affirming summary judgment in favor of defendant after defendant repeatedly informed plaintiff that he had named the wrong party); *Boyd v. Wood*, 52 F.3d 820, 821 (9th Cir. 1995) (affirming dismissal with prejudice because plaintiff named wrong defendant, and correct defendant not subject to service of process in forum state); *America West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 792, 800-802 (9th Cir. 1989) (affirming district court's refusal to allow additional discovery, amendment of complaint, and dismissal of wrong defendant); *Oghogho v. Operating Engineers Local 3 District 80*, No. 07-1570, 2009 U.S. Dist. LEXIS 9860 (E.D. Cal. Jan. 28, 2009) (granting summary judgment because plaintiff named wrong defendant).

Plaintiff unquestionably sued the wrong party. BBG Communications is not a party to any of the contracts that govern any of the services that were provided to Plaintiff, nor did it have any role in the decisions regarding disclosures about long-distance calling fees

and charges, nor did it provide telecommunications or operator assistance services to Plaintiff. BBG Communications has repeatedly informed Plaintiff of these facts, as well as the identity of the true service providers. Under these circumstances, BBG Communications is entitled to summary judgment.

**1. BBG Communications Did Not Engage In An Unfair Business Practice.**

The FAC alleges that BBG Communications "has engaged in an 'unfair' business practice by charging . . . undisclosed . . . fees in connection with long-distance phone calls made through payphones serviced by [BBG Communications]. [BBG Communications] fails to inform potential customers of both the actual and per-minute rate of the call they are attempting to place, and any ancillary fees, such as a connection fee or a minimum number of minutes, they will be charged in connection with the call." [FAC ¶ 32.]

In ruling on BBG Communications' Motion to Dismiss Plaintiff's UCL claim, the Court held that these allegations were sufficient under the balancing test set forth in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).[4] [November 17, 2010 Order at 6:2 – 7:8.] Irrespective of whether the utility of these alleged practices outweighs the harm Plaintiff allegedly suffered, BBG Communications did not engage in any of the alleged practices that could give rise to a UCL claim. The fees were charged and retained by BBG Global. [BCS Decl. ¶ xiv, Exhibit 3 (§ 2.1(e)).] The payphones were serviced by BCS, BBG Global and NOS. [BCS Decl., Exhibits 1, 3; NOS Decl., Exhibit 4.] Any authorized disclosures on the phones themselves were created and placed by The Nassau Port Authority and BCS. [BCS Decl., Exhibit 1 (§ 2.3), Exhibit 3 (§ 2.1(d)).] Finally, any disclosures made to Plaintiff before his calls were connected were made by a NOS operator or by NOS's automated operator assistance services, based

[4] The Court granted BBG Communications' motion to the extent Plaintiff argued the alleged conduct is unfair because the imposed charges were excessive. [November 17, 2010 Order at 6, fn. 1.] Thus, this case now focuses exclusively on the disclosures regarding the charges, and not on the amount of the charges themselves.

on instructions and information provided by BBG Global. [NOS Decl. ¶ 7.] BBG Communications had no role in Plaintiff's calls. [Galicot Decl. ¶ ¶ 4-7.]

**2. BBG Communications Did Not Enter Into Nor Breach A Quasi-Contract With Plaintiff.**

Plaintiff alleges that an implied contract existed through his and BBG Communications' conduct, and that BBG Communications "charged and unjustifiably retained excessive sums of money from Plaintiff through charging Plaintiff undisclosed fees and charges in connection with their payphone services." [FAC ¶ ¶ 36 – 37.] The Court concluded that these allegations sufficed under a quasi-contract theory. [November 17, 2010 Order at 7:10 – 7:23.] A quasi-contract theory of liability "applies where one obtains a benefit which he may not justly retain. The quasi-contract . . . is designed to restore the aggrieved party to his former position by return of the thing or its equivalent in money." [*Id.* (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n. 6 (2004)).]

BBG Communications, however, did not retain anything that belonged to Plaintiff that it can now restore. [Galicot Decl. ¶ 7.] Rather, BBG Global charged for the telecommunications services it provided to Plaintiff and retained that money. [BCS Decl. ¶ xiv, Exhibit 3 (§ 2.1(e)).] Thus, there can be no quasi-contract between Plaintiff and BBG Communications. *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953) ("Where no benefit is accepted or derived there is nothing from which such contract can be implied.").[5]

**3. BBG Communications Did Not Convert Plaintiff's Money.**

Plaintiff's final claim for relief is for conversion. He alleges that BBG Communications "converted the monies from Plaintiff's accounts by imposing undisclosed

[5] BBG Communications also respectfully renews the argument previously raised in BBG Communications' Motion to Dismiss: Plaintiff's quasi-contract claim falls together with his UCL claim upon which it is based. *See McBride*, 123 Cal. App. 4th 379 (no quasi-contract claim where other claims that give rise to liability fail).

fees and charges" on him. [FAC ¶ 41.] The Court concluded that, based primarily on this allegation, Plaintiff adequately pleaded a cause of action for conversion. [November 17, 2010 Order at 8:18 – 8:21.]

"Conversion is the wrongful exercise of dominion over the property of another." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005). For the same reasons that there can be no quasi-contract between BBG Communications and Plaintiff, BBG Communications did not commit the tort of conversion because it did not exercise dominion or take possession of Plaintiff's money. [Galicot Decl. ¶ 7.] The charges were imposed on Plaintiff and retained by BBG Global. [BCS Decl. ¶ xiv, Exhibit 3 (§ 2.1(e)).] Further, it is undisputable that the alleged wrongful conduct – *i.e.*, the failure to disclose the amount of those charges – was not committed by BBG Communications because other entities were exclusively responsible for the disclosures to consumers making calls from The Bahamas. [BCS Decl. ¶ vi, Exhibit 1 (§ 2.3), ¶ ¶ xii-xiii, Exhibit 3 (§ § 1.2.1, 1.3, 2.1(d)), ¶ xiv; NOS Decl. ¶ ¶ 6-9.]

**B. <u>California Law Does Not Apply To The Disclosures Made To Plaintiff In The Bahamas.</u>**

A defendant may renew arguments on summary judgment based upon a more developed factual record and the different legal standard of review that applies to a summary judgment motion as opposed to a motion to dismiss. *See Toy v. Triwire Engineering Solutions, Inc.*, 2010 WL 3448535, *3 (N.D. Cal. Sept. 1, 2010) (defendant may renew arguments in motion for summary judgment after resolution of key facts). *See also McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 513 (6th Cir. 2000); *McAnaney v. Astoria Financial Corp.*, 2009 WL 3150430, *7 (E.D.N.Y. Sept. 29, 2009); *Fisher v. Tarinor*, 242 F.3d 24, 29 n. 5 (1st Cir. 2001).

As this Court previously held:

> A federal district court sitting in diversity applies the law of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496

> (1941). In California, courts apply the governmental interest analysis to determine what law should govern the case. *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906 (2001). Under this test, the party who invokes the law of a foreign state has the burden to show the foreign state law is the appropriate law for the court to apply. *Id.* at 919.

[November 17, 2010 Order at 3:18 – 18:23.] The governmental interest analysis is a three-part test. The Court already found that BBG Communications met its burden with respect to the first two parts, but not with respect to the third. [*Id.* at 4:5 – 5:3.] Since, however, the allegations that gave rise to the Court's conclusion with respect to the third part are not grounded in truth, BBG Communications renews its argument that this action should be dismissed based on the application of the governmental interest analysis to the ***true and undisputed facts***.

**1. There Is A Material Difference Between Bahamian And California Law.**

First, "the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." *Washington Mutual*, 24 Cal. 4th at 919. This Court held that BBG Communications met this burden. [November 17, 2010 Order at 4:5 – 4:13.] More specifically, Plaintiff alleges that California's UCL law requires that companies disclose its rate and ancillary charges to consumers.[6] [FAC § 32.] But under Bahamian law, a telecommunications company is not required to disclose its rate and ancillary charges unless it has market power in The

---

[6] BBG Communications disputes Plaintiff's allegation as BBG Communications contends the UCL does not require such advance disclosures under the present circumstances. *See Berryman v. Marit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) (to state a UCL claim based on a failure to disclose, a plaintiff must allege that the defendant owes a duty to disclose to the plaintiff); *Warner Const. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1970) (one instance in which duty to disclose arises is where facts are known or accessible only to defendant, and defendant knows they are not known to ***or reasonably discoverable by plaintiff***." (emphasis added)).]; *Janda v. T-Mobile*, No. C 05-03729, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009); *Smale v. Cellco Partnership d.b.a. Verizon Wireless*, 547 F. Supp. 2d 1181 (W.D. Wash. 2008); *Riensche v. Cingular Wireless LLC d.b.a. AT&T Wireless*, 2009 U.S. Dist. LEXIS 95802 (W.D. Wash. Oct. 2, 2009). As rate information was readily available to Plaintiff if he would have simply asked [NOS Decl. ¶ 7], Plaintiff has failed to allege a recognized duty of disclosure under the UCL.

Bahamas. Bahamas Telecommunications Act, 2009, § 40(h). BBG Communications does not have market power in The Bahamas – it does not even operate in The Bahamas. [*See* Galicot Decl. ¶ 5.] Accordingly, there is a material difference between what would be required of BBG Communications under California versus Bahamian law.

**2. The Bahamas Has A Valid Interest In Applying Its Laws.**

The next step is to determine what interest each state has in having its own law applied to the case. *Washington Mutual*, 24 Cal. 4th at 919. This Court found The Bahamas "has an interest in governing conduct that occurs on its soil" and "it has an interest in protecting foreign companies from liability for conduct on its soil so that it can attract foreign businesses to The Bahamas." [November 17, 2010 Order at 4:14 – 4:17.] *See also McCann v. Foster Wheeler, LLC*, 48 Cal. 4th 68, 91-92 (2010) (states have an interest in attracting foreign business through limitations on liability).

Two additional and undisputed facts must also be introduced to this analysis: one of the entities involved in the transaction alleged in the FAC is a governmental agency [BCS Decl. ¶ v, Exhibit 2], and another one of the entities is a Bahamian corporation [BCS Decl. ¶¶ iii-vi]. Plaintiff cannot seriously dispute that The Bahamian government has an interest in governing itself and its own corporations, including how and under what conditions to provide telecommunications services to its citizens and its guests. This is especially true when The Bahamian governmental agency has expressly stated that it has entered into the transaction at issue to provide operator assisted calls to its guests (BCS Decl. ¶ iv, Exhibit 1 (Recitals A and C)), and agreed that Bahamian law "shall govern the rights and duties of the Parties and the validity, construction, enforcement, and interpretation of this Agreement." [*Id.* (§ 6.4).]

California, on the other hand, has no interest in applying its laws – which, it should be noted, have nothing to do with providing telecommunications services specifically – because none of the decisions with respect to the disclosures, assessment of fees and charges, or processing of any of the three calls Plaintiff made were determined or done by

a California business in California. [BCS Decl., ¶ ¶ iii-xv, Exhibits 1-3; NOS Decl., ¶ ¶ 3-10, Exhibit 4; Galicot Decl., ¶ ¶ 4-7.] Accordingly, there is no justifiable reason to invoke California's laws to protect a citizen of North Carolina who is complaining about conduct of foreign entities that exclusively occurred in The Bahamas, Switzerland, Mexico and Texas.

**3. The Bahamas Has The Predominant Interest In Applying Its Laws.**

The Bahamas' interests in applying its laws to the conduct at issue in this case vastly outweighs California's interests, if any interest were even conceivable. At the pleading stage, BBG Communications argued that The Bahamas has the stronger interest because the phone calls were initiated from The Bahamas, but the Court declined to apply Bahamian law because "Plaintiff alleges that the wrongful conduct also arises out of Defendant's billing practices and the conduct of its operators. (See FAC.) Plaintiff's FAC alleges that Defendant operates its billing, operator, and telecommunications services from its business offices in San Diego, California. (*Id.* ¶ 11.) BBG's principle place of business is in California." [November 17, 2010 Order at 4:23 – 4:27.]

The undisputed facts show, however, that ***none of the allegedly wrongful conduct actually occurred in California:***

- The calls originated in **The Bahamas**, from a location controlled by a Bahamian governmental agency. [NOS Decl. ¶ 8-9; BCS Decl. ¶¶ iii-xiv, Exhibits 1 and 2.]

- The decisions regarding advertising and disclosures, including their placement on the phones, were made in **The Bahamas** by a Bahamian governmental agency and a Bahamian company. [BCS Decl. ¶¶ iii-xiv, Exhibits 1 and 2.]

- The telecommunications service dealing with the transport of the calls from The Bahamas to **North Carolina**, including the charges associated with that

service, were exclusively controlled by a Swiss corporation, in its sole discretion, located in **Switzerland**. Further, all revenues for that service were collected by that corporation. [BCS Decl. ¶¶ iii-xiv, Exhibits 1-3.]

- The operator assistance service, including the actual transfer of the calls from The Bahamas to North Carolina, was provided by a Texas corporation from call centers located in **Longview, Texas** and **Monterrey, Mexico**. [NOS Decl. ¶¶ 3-10, Exhibits 4 and 5.]

BBG Communications had nothing to do with any of this. [Galicot Decl. ¶¶ 4-7.] Accordingly, there are no facts which give rise to California having ***any*** interest in applying its laws. As a result, the scale certainly tips in The Bahamas' favor. *See also Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 134 (1985) ("Under that longstanding principle of the law of nations, the forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there. The philosophy behind the comity doctrine is easily identified: respect for the sovereignty of other states or countries…"); *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895) (comity is the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.").

**C. California Law Does Not Apply To The Business Practices Of Foreign Entities.**

Finally, BBG Communications also renews its argument that under *Norwest Mortgage, Inv. v. Superior Court*, 72 Cal. App. 4th 214 (1999), California state law cannot apply to this case because, as set forth above, it is undisputed that all of the allegedly wrongful conduct occurred outside of California by non-California businesses or agencies. *See also Morgan v. Harmonix Music Sys. Inc.*, No. 08-5211, 2009 WL 2031765 (N.D. Cal. July 7, 2009) (plaintiff failed to show what conduct of defendant, if any, that violated state law took place in California, or how plaintiff was injured in California); *Tidenburg v.*

*Bidz.com*, No. 08-5553, 2009 WL 605249 (C.D. Cal. March 4, 2009) (dismissing UCL claim because "the Supreme Court has specifically admonished that the existence of personal jurisdiction over a defendant does not alone permit application of the forum law to the claims of nonresident plaintiffs . . . Plaintiff does not allege any specific facts linking Defendants' contacts with California to the claims Plaintiff asserts against them. Instead, she only alleges that Bidz.com's principal place of business is in California."); *Priyanto v. MS/Amsterdam*, No. 07-3811, 2009 WL 15739 (C.D. Cal. Jan. 23, 2009) (the UCL does not apply to claims brought by nonresident plaintiffs challenging failure to pay for work performed outside of California, even if defendant's principal place of business and place of management decisions was in California); *Doe v. Wal-Mart Stores, Inc.*, No. 05-7307, 2007 WL 5975664 (March 30, 2007) ("To the extent the non-California Plaintiffs are alleging violations of Section 17200 based on conduct that occurred in factories in foreign countries, such conduct is not within the reach of the statute.").

In opposition to each of BBG Communications' Motions to Dismiss, Plaintiff attempted to distinguish these cases from the allegations of the Complaint and then the FAC. [*See* Plaintiff's Opposition to Motion to Dismiss Complaint at 5-7 (Docket No. 9); Plaintiff's Opposition to Motion to Dismiss FAC at 5-7 (Docket No. 17).] In that regard, Plaintiff claimed that the critical distinguishing factor was that "in *Norwest* . . . the *actors* committing the alleged wrongful activity were not in California." [Docket No. 9 p. 6:7-8.] Based on Plaintiff's own discussion of these authorities, he cannot now possibly deny that they are indistinguishable from the undisputed facts. Accordingly, there can be no dispute that California law, and the UCL in particular, does not apply to the disclosure practices of non-California entities that occurred beyond California's borders.

**D. Even If California Law Applied, Plaintiff's Claims Are Not Actionable.**

The California Supreme Court held that where the Legislature has considered certain activity in certain circumstances and determined that conduct is lawful, then that same conduct may not form the basis of a UCL claim. *Cel-Tech Com. Inc. v. Los Angeles*

*Cellular Tel. Co.*, 20 Cal. 4th 163, 183-184 (1999). This argument applies with even greater force when the legislative body is a foreign one – a California court should not be able to use the unfair competition law to condemn actions a foreign legislative body has permitted. *See id.* at 184.

The Ninth Circuit applied this "safe harbor" doctrine in several recent consumer class actions. *Hauk v. JP Morgan Chase Bank*, 552 F.3d 1114, 1122 (9th Cir. 2009) (bank's compliance with federal law's disclosure requirements provides safe harbor with respect to UCL claims based on sufficiency of disclosures); *Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008) (finding disclosures that comply with federal law comes within UCL's safe harbor). *See also Von Koenig v. Snapple Bevg. Corp.*, 713 F.Supp.2d 1066, 1073-76 (E.D. Cal. 2010); *Baker v. Aegis Wholesale Corp.*, No. C-09-5280, 2010 WL 2853915 (N.D. Cal. July 21, 2010). The Northern District in *Baker* added that, under the safe harbor doctrine, "there must be an actual conflict between [the law] and the conduct alleged under the UCL in order for the safe harbor provision to kick in." *Baker*, 2010 WL 2853915 at *6.

Here, The Bahamian legislature passed The Bahamas Telecommunications Act, and in doing so specifically considered who is required to disclose rate information to consumers wishing to place long-distance telephone calls from The Bahamas. As set forth above, under this law and based on the allegations of the FAC, BBG Communications (even if it were the right defendant) is not required to disclose rate information. That is a safe harbor upon which Plaintiff cannot assail with a UCL claim. *Cel-Tech*, 20 Cal.4th at 183-84. Further, because the Court already found there is an actual conflict between The Bahamas Telecommunications Act and the UCL, it is indisputable that the safe harbor doctrine applies. *Baker*, 2010 WL 2853915 at *6.

The undisputed fact that a Bahamian governmental agency (*i.e.*, The Nassau Port Department) was directly involved in providing Plaintiff with long distance calling services and in authorizing the allegedly wrongful disclosures with respect those services adds even more weight to this argument. *See People v. Duz-Mor Diagnostic Lab.*, 68

Cal.App.4th 654, 662 (1998). For example, the Court of Appeal in *Duz-Mor* agreed with the trial court's finding that the defendant laboratory "engaged in the very same practices engaged in by other independent clinical laboratories, **practices which were known to and accepted as appropriate by the federal and state regulatory agencies**. Thus, there is no reason for the Court to conclude that the practices offended public policy, were unethical, oppressive, unscrupulous, or otherwise injurious to California health care consumers." *Id.* (emphasis added). Similarly, there is no reason here for the Court to conclude that the disclosure practices alleged in the FAC are unfair under California law, where The Bahamian government has considered them, knows of them, authorizes them, and accepts them as appropriate. Moreover, it would be a nonsensical interpretation of the UCL if a non-California corporation exclusively acting in The Bahamas could engage in the very same practices that Plaintiff alleges BBG Communications engages in, but BBG Communications would be prohibited from those same practices simply because it is headquartered in California. As set forth above, the UCL does not reach that far.[7]

## V.

## CONCLUSION

For the foregoing reasons, BBG Communications respectfully requests that the Court enter summary judgment in its favor and against Plaintiff Brandon Evans.

Dated: January 12, 2011 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/

FRED R. PUGLISI
Attorneys for Defendant
BBG COMMUNICATIONS, INC.

[7] In rendering the alleged conduct in the FAC not actionable under the UCL, the safe harbor doctrine eliminates any basis upon which Plaintiff could argue that it is "wrongful." Thus, each of Plaintiff's other two claims fall together with the UCL claim.