FRED R. PUGLISI, Cal. Bar No. 121822
VALERIE E. ALTER, Cal. Bar No. 239905
ELIZABETH S. BERMAN, Cal. Bar No. 252377
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: 310-228-3700
Facsimile: 310-228-3701
fpuglisi@sheppardmullin.com
valter@sheppardmullin.com
eberman@sheppardmullin.com

Attorneys for Defendant,
BBG Communications, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON EVANS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BBG COMMUNICATIONS, INC., a Delaware CORPORATION, and DOES 1 - 10,<br><br>Defendant. | Case No. 10-CV-0542-H-NLS<br><br>**DECLARATION OF**<br><br>**SUSAN FREEMAN**<br><br>**IN SUPPORT OF DEFENDANT BBG COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: February 28, 2011<br>Time: 10:30 am<br>Courtroom: 13<br><br>[*Notice of Motion and Motion for Summary Judgment, Memorandum of Points & Authorities, Separate Statement of Undisputed Material Facts In Support of Summary Judgment and Declarations of Jorge Macari and Rafael Galicot in Support of Summary Judgment, filed concurrently herewith.*]<br><br>Complaint filed: March 12, 2010<br>Trial Date: None Set |

10-CV-0542-H-NLS

# DECLARATION OF SUSAN FREEMAN

I, SUSAN FREEMAN, declare as follows:

1. I am the Director of Billing Operations for Network Operator Services, Inc. ("**NOS**"). I make this declaration based on my personal knowledge, my review of the records available to me as they are kept in the ordinary course of NOS' business, information obtained from other employees upon whom I regularly rely in the ordinary course of NOS' business, or my general knowledge of the business practices of NOS, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2. This declaration is submitted in support of BBG Communications, Inc.'s Motion for Summary Judgment.

3. Attached hereto as **EXHIBIT 4** is a true and correct copy of the "Centris Operator Services Agreement" ("**Operator Services Agreement**") between NOS and BBG Holdings, Ltd. dated March 17, 2006.

4. NOS consented and agreed to the assignment of the Operator Services Agreement from BBG Holdings, Ltd. to BBG Global AG ("**BBG Global**"). Attached hereto as **EXHIBIT 5** is a true and correct copy of NOS' consent and agreement to the assignment dated in or around early March, 2007.

5. As set forth in Section 2.2 of the Operator Services Agreement, the contract automatically renews every six months after March 17, 2007 if neither party is in default or neither party terminates the contract. Neither NOS nor BBG Global has been in default. Neither NOS nor BBG Global has terminated the Operator Services Agreement.

Therefore, the Operator Services Agreement has governed the relationship between BBG Global and NOS since March, 2007 through the present.

6. NOS is a Texas corporation. Pursuant to the Operator Services Agreement, NOS provides automated and live operator call services to companies like BBG Global. More specifically, NOS automated call services are performed at NOS' headquarters in Longview, Texas. Live operator call services are performed in Monterrey, Mexico. NOS does not have any offices or operations in California.

7. BBG Global-serviced payphone calls that are routed by BBG Global to NOS' platform, are processed by NOS pursuant to the Operator Services Agreement on behalf of BBG Global. More specifically, upon arriving at NOS' switch, NOS' computerized systems automatically identify the originating phone by its number (the "**ANI**"). Based on this ANI, NOS' systems identify its customer (i.e., in this example, BBG Global), the proper language for prompting the caller (i.e., in this case English), the proper rate plan (as provided to NOS by BBG Global), and proper prompts for that call. The caller is then prompted via NOS' automated system to enter certain information, such as the destination phone number and certain billing and identity verification information. During this process, the caller is also given the option to speak with a live operator. Rate information can be obtained by request from the operator before the call is connected and before any charge is incurred by the caller. The operator provides a rate quote to the caller based on the rate information provided by BBG Global and programmed into NOS' systems.

8. For each call processed by NOS, no matter who the NOS' customer, NOS' system automatically assigns an internal unique identifier and maintains certain information about the call ("**Call Record Data**" or "**CRD**"). Such information includes where the call originated, the length of time the call spent on NOS' switch port, the type of operator assistance provided (i.e. automated or live), the language in which service was

provided, billing information, where the call terminated, the call disposition, and associated fee and rate information.

9. I have reviewed NOS' Call Record Data and have identified the three calls made by Mr. Evans from Nassau to North Carolina as referenced in his complaint. According to NOS' CRD, each of the three calls were processed on November 21, 2009. The first call was processed by a live operator in Monterrey, Mexico. Both the second and third calls were processed by NOS' automated system located in Longview, Texas.

10. NOS issues BBG Global a monthly invoice for the services it provides to BBG Global, which is in turn paid for by BBG Global. NOS charged BBG Global for the services NOS provided associated with processing the calls made by Mr. Evans.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 20, 2010 at Longview, Texas.

_____
Susan Freeman