# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON EVANS, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BBG COMMUNICATIONS, INC., a Delaware Corporation; and DOES 1-10,<br><br>Defendants. | CASE NO. 10-CV-542 H (NLS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On January 12, 2011, Defendant BBG Communications, Inc. ("BBG Communications") filed a motion for summary judgment. (Doc. No. 31.) On February 14, 2011, Plaintiff Brandon Evans ("Evans") filed his response in opposition to the motion. (Doc. No. 37.) On February 18, 2011, Defendant filed its reply. (Doc. No. 40.) The Court held a hearing on the motion for summary judgment on February 28, 2011. Fred Puglisi and Elizabeth Berman appeared on behalf of Defendant BBG Communications. Eric Benink appeared on behalf of Plaintiff Evans. After due consideration, the Court GRANTS Defendant's motion for summary judgment.

## BACKGROUND

In his first amended complaint ("FAC"), Plaintiff Evans ("Evans") asserts causes of action against BBG Communications Inc. for violation of California Unfair Competition law ("UCL"), breach of implied contract, and conversion concerning rates charged for three

international phone calls Plaintiff made following a cruise from a payphone in the port in the Bahamas to North Carolina. (Doc. No. 13.) Defendant BBG Communications moves for summary judgment on the grounds that Plaintiff has sued the wrong company. Defendant submits as evidence a contract between BBG Global—not Defendant—and a company in the Bahamas—also not Defendant—named BCS that was approved by the Bahamian government to provide long distance telecommunications service. The payphone included a disclosure that said "U.S./International Calls from $0.69 a minute," due to the varied nature of the calls. Callers could obtain more rate information by exercising the option to speak to a live operator before their call is placed by the automated system and before any charges are incurred. (Doc. No. 31-7, Declaration of Susan Freeman ("Freeman Decl."), ¶ 7.)

## DISCUSSION

**I.    Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth

facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. "The 'opponent must do more than simply show that there is some metaphysical doubt as to the material fact.'" Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 265-66 (9th Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Furthermore, the nonmoving party generally "cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy, 952 F.2d at 266; see Foster v. Arcata Assocs., 772 F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048 (1986); Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543–44 (9th Cir. 1975).

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

## II.     Identity of Proper Defendant

BBG Communications moves for summary judgment on the ground that Plaintiff Evans has sued the wrong defendant. (Doc. No. 31-1 at 10.) BBG Communications contends that BBG Global, a Swiss corporation, not BBG Communications, is the company that contracted to provide long distance pay phone service in the Bahamas and charged Plaintiff Evans for the calls he made. (Doc. No. 31-1 at 10-12.) Summary judgment should be granted for the defendant if undisputed facts show that a plaintiff has named the wrong party as the defendant. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (granting summary judgment for defendant who repeatedly told plaintiff he sued the wrong party and where plaintiff did not allege any theory of liability where defendant could be held liable); Oghoho v. Operating Eng'rs Local 3 Dist. 80, No. 07-1570, 2009 U.S. Dist. LEXIS 9860

(E.D. Cal. Jan. 28, 2009).

Defendant submits evidence that Plaintiff sued the wrong party.[1]  Defendant BBG Communications submits a contract between BBG Global and Bahamas Communications Services, LTD ("BCS"), a Bahamian company who has authority under the Bahamian government to provide telecommunications consulting, to provide long distance telecommunication services in the Bahamas.  (Doc. No. 31-6.)  BBG Communications additionally submits a contract between BBG Global and Network Operator Services ("NOS"), a Texas company that provides automated and live operator call services, to provide operator service for BBG Global for payphones in the Bahamas.  (Doc. Nos. 31-8, 31-9.)  BBG Communications is not a party to any of these contracts that govern the services provided to Plaintiff in the Bahamas and did not provide the services.  (See Doc. Nos. 31-4, 31-6, 31-8, 31-9.)  BBG Communications also did not have any role in making the decisions regarding disclosures of the calling fees.  (Doc. No. 31-6 §§ 1.2.1, 1.3, 2.1.)  BBG Communications also did not provide operating assistance services to Plaintiff.  (Doc. Nos. 31-8, 31-9.)  Thus, Defendant argues that BBG Communications cannot be held liable under the California UCL, for breach of implied contract, or for conversion because it is not the entity that took Plaintiffs' money or failed to make appropriate rate and fee disclosures in the Bahamas.  (Doc. No. 31-1 at 10-12.)

The Court evaluates each of Plaintiff's claims in turn.  First, Plaintiff alleges that BBG Communications engaged in an unfair business practice by charging excessive, undisclosed and unfair fees for the long distance phone calls he made in the Bahamas in violation of California UCL.  (FAC ¶¶ 29-34.)  The California UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Defendant's evidence shows that BBG Communications was not involved in the non-disclosure and charging of the fees.  Instead, it was BBG Global that

---

[1] Defendant BBG Communications repeatedly informed Plaintiff that he sued the wrong party and provided Plaintiff with the name of the entity that operated in the Bahamas.  (See e.g., Doc. No. 5-1 at 4 n.1, Doc. No. 15-1 at 1 n.1.)

charged Plaintiff the fees. (Declaration of Jorge Macari ("Macari Decl."), ¶ 14, Doc. No. 31-6 § 2.1(e).) BCS and the Nassau Port Authority determined what disclosures to make to Plaintiff on the payphone. (Macari Decl. ¶ 8, Doc. Nos. 31-4 § 2.3, 31-6 § 2.1(d).) NOS made or failed to make disclosures to Plaintiff during connection his phone calls. (Macari Decl. ¶ 7.) Defendant BBG Communications did not have a role in Plaintiff's calls. (Doc. No. 31-10, Declaration of Rafael Galicot, "Galicot Decl.", ¶¶ 4-7.)

Second, Plaintiff alleges that an implied contract arose from his and BBG Communication's conduct and that BBG Communications breached this contract by charging him undisclosed fees. (Id. ¶¶ 35-38.) An implied contract "applies where one obtains a benefit which he may not justly retain . . . and is designed to restore the aggrieved party to his former position by return of the thing or its equivalent in money." McBride v. Boughton, 123 Cal. App. 4th 379, 388 n.6 (2004) (quotation marks and citation omitted). However, Defendant's evidence shows that it was BBG Global that retained any benefit by charging and retaining fees Plaintiff paid. (Macari Decl. ¶ 14, Doc. No. 31-6 § 2.1(e).) BBG Communications did not retain any fees from Plaintiff. (See Galicot Decl. ¶ 7.) Thus, no implied contract can arise between Plaintiff and BBG Communications because BBG Communications did not retain any fees from Plaintiff. Weitzenkorn v. Lesser, 40 Cal. 2d 778, 794 (1953) ("Where no benefit is accepted or derived there is nothing from which such contract can be implied.") (internal citations omitted).

Lastly, Plaintiff alleges that BBG Communications converted Plaintiffs money by imposing undisclosed fees. (Id. ¶¶ 39-42.) Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." Greka Integrated, Inc. v. Lowrey, 133 Cal. App. 4th 1572, 1581 (2005) (quotation marks and citation omitted). Defendant's evidence shows that BBG Global is the entity that charged Plaintiffs the fees and retained his money. (Macari Decl. ¶ 14, Doc. No. 31-6 § 2.1(e).) BBG Communications did not take Plaintiff's money nor did it fail to make the required disclosures.

(Galicot Decl. ¶ 7, Macari Decl. ¶¶ 7-8, 12-14, Freeman Decl. ¶¶ 6-9, Doc. Nos. 31-4 § 2.3, 31-6 §§ 1.2.1, 1.3, 2.1(d).)

The Court agrees with Defendant.  Plaintiff Evans does not set forth sufficient evidence to rebut the contract between BBG Global and the Bahamian company authorized by the Bahamian government to provide long distance telecommunications services, or between BBG Global and the Texas company that provides operator services.  (See Doc. No. 37.)  BBG Global, BCS, and NOS are not parties to this lawsuit.  Accordingly, the Court concludes that Defendant sufficiently establishes the absence of a genuine issue of material fact as to who provides long distance pay phone services in the Bahamas.  See Celotex, 477 U.S. at 322.  The Court GRANTS summary judgment for Defendant BBG Communications on the ground that it is not the proper defendant.

### III.   Choice of Law

Furthermore, BBG Communications also argues that California law should not apply to the allegedly wrongful conduct because no part of the conduct occurred in California. (Doc. No. 31-1 at 12-17.)  Instead, Defendant contends the conduct occurred in the Bahamas, Switzerland, Mexico, and Texas—not California.  (Id. at 15.)

A federal district court sitting in diversity applies the law of the state in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).  In California, courts apply the governmental interest analysis to determine what law should govern the case.  Washington Mutual Bank, FA v. Superior Court, 24 Cal. 4th 906 (2001).  Under this test, the party who invokes the law of a foreign state has the burden to show the foreign state law is the appropriate law for the court to apply.  Id. at 919.  First, "the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California."  Id.  Second, if the court finds the laws to be materially different, it must then determine what interest each state has in having its own law applied to the case.  Id.  Third, if the court determines that each state has an interest in having its own law applied, the court must finally select the law of the state "whose interests would be 'more impaired' if its laws were not applied."  Id.  In making this comparative analysis, the

court must determine the "the relative commitment of the respective states to the laws involved and consider the history and current status of the states' laws and the function and purpose of those laws." Id. (internal quotation marks omitted).

In its previous order denying Defendant BBG Communication's motion to dismiss the complaint, the Court concluded that California maintained an interest in the resolution of this case because Plaintiff originally alleged that BBG Communications operated its billing, operator, and telecommunications services from its office in San Diego. (Doc. No. 27 at 4.) But the evidence submitted for the summary judgment shows the BBG Communications was not involved.

Defendant BBG Communications submitted evidence to contradict these ties to California. Defendant submits evidence that Swiss company BBG Global is the actual entity that provides the payphone service in the Bahamas. (Doc. No. 31-6, Exhibit 3.) Specifically, Defendant submits evidence that the pay phones in the cruise ship terminal port in Nassau are at a port owned, operated and controlled by a Bahamian governmental agency, the Nassau Port Department. (Macari Decl. ¶ 4.) The Nassau Port Department contracted with BCS to provide call services to the pay phones. (Id. ¶¶ 3-6.) The contract was executed in the Bahamas stated that Bahamian law would govern the contract. (Id. ¶ 4.) BCS in turn contracted with BBG Global to provide long distance telecommunications services. (Id. ¶¶ 10-11, Doc. No. 31-6.) Under the contract, BBG Global and BCS developed the sales and marketing strategies and the pricing terms and conditions for the long distance services. (Doc. No. 31-6 §§ 1.2.1, 1.3.) BBG Global had the sole discretion to determine the rates to be charged for the services. (Id. § 2.1.) The contract between BBG Global and BCS was also governed by Bahamian law. (Id. § 5.4.)

Furthermore, Defendant also submitted declarations and contracts that shows that a Texas corporation, NOS, provides the operator assistance for the calls and the call centers are located in Monterrey, Mexico. (Doc. Nos. 31-8, 31-9.) BBG Global contracted with NOS to provide the automated and live operator call services for the payphones at the Nassau Port. (Freeman Decl. ¶ 3-6, Doc. No. 31-8.) The contract provided that calls would arrive at a NOS

switch and NOS's computerized systems would identify the originating phone number. (Freeman Decl. ¶ 7.) Based on this number, NOS determines the service provider (i.e. BBG Global), the proper rate plan, and proper prompts for the call. (Id.) The customer then is prompted to enter the destination phone number and billing information. (Id.) At this point, the caller is given an option to speak to a live operator, with whom the caller can request rate information before the call is placed. (Id.) NOS provides these services in Longview, Texas or in Monterrey, Mexico. (Id. ¶ 6.) Based on NOS's records, Plaintiff Evan's first two calls were processed by a live operator in Mexico and his last call was processed by NOS's automated system in Texas. (Id. ¶¶ 8-9.)

Defendant's unrebutted evidence shows that BBG Communications was not involved in any of the services used during Plaintiff Evan's three phone calls and did not provide any service from California. Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. Plaintiff Evans does not set forth sufficient evidence to rebut these facts. (See Doc. No. 37.) This action centers around phone calls made by Evans, a North Carolina resident, from outside the United States in the Bahamas to his family in North Carolina. (FAC ¶¶ 6, 12.) An international company may elect to do business in the Bahamas through non-Californian entities. Thus, the Court concludes from the admissible evidence that California does not have an interest in applying its laws to this case. See Washington Mutual Bank, 24 Cal. 4th at 919. A non-resident is on an international vacation in the Bahamas. Accordingly, the Court GRANTS Defendant BBG Communication's motion for summary judgment on the UCL, breach of implied contract, and conversion claims.[2]

**IV. Rule 56(d)**

Plaintiff Evans argues that the Court should apply Federal Rule of Civil Procedure 56(d)

---

[2] BBG Communications also argues that even under California law, Plaintiff's claim are not actionable because they fall within the safe harbor of the UCL where actions that are in compliance with another legislative body cannot violate the UCL. (Doc. No. 31-1 at 17-19.) Because the Court grants summary judgment on other grounds, the Court declines to address this argument.

and continue or deny the motion.³  (Doc. No. 37 at 4.)  Rule 56(d) provides "a mechanism whereby a party opposing a motion for summary judgment may, by affidavit, state valid reasons why he is temporarily unable to present 'facts essential to justify the party's opposition' to such motion."  Weinberg v. Whatcom County, 241 F.3d 746, 750 (9th Cir. 2001).  If the Court grants the request under Rule 56(d), the court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

After considering the parties' arguments, the Court declines to exercise its discretion under Rule 56(d) to continue or deny the motion.  Plaintiff has not sufficiently shown why he is unable to present the facts necessary to defend against the motion for summary judgment.  As early as the first motion to dismiss filed over six months ago on May 24, 2010, Defendant BBG Communications has repeatedly asserted that it does not do business in the Bahamas and the wrong defendant was sued.  (See Doc. No. 5-1 at 4 n.1.)  Additionally, the complaint does not include a claim for alter ego.

## CONCLUSION

After due consideration of the parties' argument, the Court GRANTS Defendant BBG Communication's motion for summary judgment.

**IT IS SO ORDERED**.

DATED: March 2, 2011

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

³Plaintiff invokes Rule 56(f) in his opposition to the summary judgment. (See Doc. No. 37 at 4.) The 2010 amendments to Rule 56 moves section (f) to section (d) without substantial change. Accordingly, the Court treats Plaintiffs request under 56(f) to be a request under 56(d) of the current rule.